## EXHIBIT B

Publishing Agreement for *Hacking World of Warcraft* (pp. 1–3, 6–7).

# WILEY PUBLISHING, INC.

**AGREEMENT** made this **20th** day of **July 2006**, between **Daniel Gilbert**, whose address is 38 Autumn Lane Amherst, MA 01002 (the **"Author"**) and **Wiley Publishing, Inc.**, a Wiley company, 111 River Street, Hoboken, New Jersey 07030-5774 (the **"Publisher"**) with respect to a Work tentatively titled: **Hacking World of Warcraft** (the **"Work"**).

The Publisher and the Author wish to work together to achieve the professional standards and success that they each desire from the Work and agree as follows:

**Rights**

1.      The Author hereby grants to the Publisher during the full term of copyright and all extensions thereof the full and exclusive rights comprised in the copyright in the Work, including any "Supplementary Materials" (as defined in Paragraph 2(a) below) and any revised editions, including but not limited to the right, by itself or with others, throughout the world, to print, publish, republish, distribute, display and transmit the Work in whole or in part and to prepare, publish, distribute and transmit derivative works based thereon, in English and in other languages, in all media of expression now known or later developed, and to license or permit others to do so.

**Manuscript**

2.      (a)      The Author agrees to prepare and submit the Manuscript of the Work, to consist of approximately 400 pages not later than **December 20, 2006**, and on the following schedule unless the Publisher has agreed to extend the time in writing (the "Due Date").

(1)  A detailed table of contents, a description of its subject matter and specifications for its proposed Manuscript ("Manuscript") no later than **August 1, 2006**. The Publisher will promptly notify the Author of any changes to the table of contents that are necessary in order to obtain the Publisher's approval thereof.

(2)  The first twenty-five percent (25%) of the Manuscript and related material by **August 30, 2006**;

(3)  The second twenty-five percent (25%) of the Manuscript and related materials by **September 30, 2006** ;

(4)  The third twenty-five percent (25%) of the Manuscript and related materials by **October 30, 2006** ;

(5)  The final twenty-five percent (25%) of the Manuscript and related materials by **November 30, 2006** ;

(6)  All additional materials that the Publisher deems necessary to publish the Work by **December 20, 2006**. The Publisher will promptly notify the Author in writing of any such necessary additional materials.

The final Manuscript shall be submitted in the electronic format specified by the Publisher, or in the Word template supplied by the Publisher, and shall be complete and satisfactory to the Publisher in organization, form, content, and style, accompanied by a table of contents and any additional material listed below (individually and collectively the "Supplementary Materials" or the "Materials"), which shall be considered part of the Work:

| Material | Due Date (if different from above) |
|---|---|
| **Any source code or links for website download** | **December 20, 2006** |

If the Author fails to supply any Supplementary Materials or illustrative material on or before the Due Date, the Publisher shall have the right, but not the obligation, to obtain them and charge the reasonable cost against any sums due to the Author.

Illustrative material submitted as part of the final Manuscript shall be in the form of black and white drawings, photographs or high resolution computer renderings in a form suitable for direct use with or without redrawing, lettering or retouching by the Publisher or in another form acceptable to the Publisher. In the alternative, at the Publisher's option, illustrative materials shall be submitted separately in native graphic file format, not imbedded in the Word template.

Page #1
WPI 2002
Single Author

The Author shall, at the Author's expense, submit with the final Manuscript of the Work, written third party permissions, on a form approved by the Publisher, to use any copyrighted material which the Author incorporates in the Work.

If the Publisher determines that an index to the Work is desirable, the Publisher shall prepare or engage a third party to prepare the index in such a manner as the Publisher deems appropriate and pay the cost thereof.

2.    (b)

(1)    If the Author fails to timely create and deliver acceptable Materials in conformity with one or more Manuscript delivery milestones specified in the schedule of Paragraph 2(a) above, the Publisher may engage another writer to assist in completing the Work or make other arrangements as the Publisher deems acceptable to keep the Work on schedule or make the Manuscript complete and satisfactory. In such event the reasonable cost of such arrangements may be charged against any sums due to the Author hereunder. If, at the twenty five percent (25%) delivery Due Date or any time thereafter, the Manuscript is deemed unacceptable by the Publisher or has not been timely delivered, the Publisher may terminate the Agreement pursuant to Paragraph 19 below.

(2)    If the Author delivers the final Manuscript on or before the final Due Date, the Publisher shall, within ninety (90) days after such delivery, notify the Author whether the Manuscript is, in the Publisher's judgment, complete and satisfactory and, if it is not, request changes that would make the Manuscript satisfactory to the Publisher.

(3)    If the Author does not make the changes requested by the Publisher within ten (10) days after receipt of such request, or if, notwithstanding such changes, the Manuscript is not, in the Publisher's judgment, complete and satisfactory, the Publisher may terminate this Agreement pursuant to Paragraph 19 below or make such other arrangements as the Publisher deems advisable to make the Manuscript complete and satisfactory, in which event the reasonable costs of such arrangements may be charged against any sums due to the Author.

(4)    In the event the Publisher determines that the necessary revisions would be so extensive and fundamental that a satisfactory and timely revision would not be feasible, the Publisher shall have the right to deem the Manuscript unsatisfactory without requesting changes and to terminate the Agreement pursuant to Paragraph 19 below.

2.    (c)    Although the Publisher will review and edit the Manuscript, the Author is ultimately responsible for the Work's accuracy and completeness. Within ten (10) days after the Publisher's delivery of review pages to the Author, the Author will return them proofed for accuracy and completeness, together with thorough and accurate responses to any queries or questions the Publisher has communicated to the Author with respect thereto. If the Author does not or is unable to return the review pages within ten (10) days, based on its publication deadline the Publisher may make appropriate changes and proceed with production. At its own cost the Publisher will correct discrepancies between the review pages it submits to the Author and the edited Manuscript approved by the Publisher and the Author. The Publisher will bear the costs of additional alterations after page layout which, based on the Author's advice to the Publisher, are necessary to ensure technical accuracy. If however, such alterations amount to more than ten percent (10%) of the cost of original composition, the Publisher will charge the cost of such alterations against the Author's royalty account.

2.    (d)    If the Author does not receive notification from the Publisher pursuant to Paragraph 2(b) above within the prescribed period after timely delivery of the Manuscript, the Author may request the Publisher in writing to notify the Author whether the Manuscript is complete and satisfactory to the Publisher and, if it is not, to indicate what changes would make it complete and satisfactory. If the Publisher does not respond to the Author's request within thirty (30) days after receipt of such request, the Author may terminate this Agreement pursuant to Paragraph 17 below.

2.    (e)    If the Author does not submit the final Manuscript on or before the Due Date, the Publisher shall have the exclusive right but not the obligation to publish the Work. In such case, the Author shall submit the final Manuscript to the Publisher upon completion and the Publisher shall have ninety (90) days from the date of receipt of the final Manuscript to determine, in its sole discretion, whether it will proceed under this Agreement or terminate this Agreement pursuant to Paragraph 19 below.

Page #2
WPI 2002
Single Author

**Publication**     3.     **(a)**     Subject to the terms and conditions contained herein, the Publisher shall publish the Work in such style and manner as the Publisher deems appropriate, within eighteen (18) months from the date of the Publisher's acceptance of the final Manuscript. Notwithstanding the foregoing, in the event either (i) the Work is significantly longer or shorter than specified in Paragraph 2(a) above; (ii) after the Manuscript is accepted for publication, changes to the Manuscript are made by the Author with the Publisher's consent, revision of the Manuscript is required due to unforeseen events or developments, technical errors require correction, or the Author for any reason does not meet the Publisher's schedule for returning materials; (iii) delays result from acts or conditions beyond the control of the Publisher or its suppliers or contractors, including, but not limited to, war, fire, flood, labor disputes, governmental action, shortages of material, riots, civil commotions or other similar causes; or (iv) publication must be delayed to accommodate first serial or book club use, then the Publisher shall publish the Work as soon as the Publisher deems practical.

3.     **(b)**     The Publisher shall promote and sell the Work in such manner and at such prices as it deems appropriate, and make any and all other arrangements it deems appropriate with respect to the Work and the rights thereto granted to it herein.

3.     **(c)**     The Publisher will not be obligated to publish the Work if, in its reasonable judgment, circumstances beyond its control adversely affect the Work's marketability or potential sales. In such event, (i) the Publisher will notify and pay the Author the advance installment next due, (ii) all rights to the Work, exclusive of the Title and Brand of the Work specified in Paragraph 11 below, will revert to the Author, and (iii) this Agreement will terminate. If the Author places such reverted Work with another publisher, the Author will provide written notice and repay all advances to the Publisher to the extent the Author receives advances and royalties from such other publisher.

**Copyright Notice**     4.     The Publisher shall include in each copy of the Work published by it a notice of copyright in the Publisher's name in conformity with the United States Copyright Act and the Universal Copyright Convention and require its licensees to do the same. The Publisher shall have the right to register the copyright in the Work with the United States Copyright Office. Any textual or illustrative material prepared for the Work by the Publisher at its expense may be copyrighted separately in the Publisher's name.

**Royalties**     5.     **(a)**     The Publisher shall pay to the Author, as a royalty, the following percentages of the Publisher's "net dollar receipts" (as defined below) from sales or licenses of the Work:

|  |  | Percentages: |
|---|---|---|
| (1) | from sales of a hardcover edition in the United States, its possessions and territories, and Canada: | 10% |
| (2) | (i) from sales of a trade paperback or other softcover edition (except for a mass-market paperback edition) in the United States, its possessions and territories, and Canada: | 10% |
|  | (ii) intentionally omitted |  |
| (3) | from sales of a hardcover edition elsewhere: | 5% |
| (4) | from sales of a trade paperback or other softcover edition (including a mass-market paperback edition) elsewhere: | 5% |
| (5) | from sales or licenses of the Work or materials from the Work in electronic form, whether directly by the Publisher or indirectly through or with others: | 10% |

Page #3
WPI 2002
Single Author

may grant such rights in connection with the license of any subsidiary rights in the Work. The Author shall provide in a timely manner any information reasonably requested by the Publisher for use in promoting and advertising the Work.

**Title of the Work and Branding**

11.    The rights in the title of the Work, and any series titles, trademarks, service marks, "look and feel", and trade dress used on or in connection with the Work (hereinafter collectively referred to as the "Brand"), shall belong solely to the Publisher, and the Author hereby transfers and assigns to the Publisher in perpetuity any rights the Author might have therein. The Publisher shall have the exclusive right to license or otherwise exploit the Brand, in any media, by itself or in arrangements with third parties, separate and apart from the Work or in combination with the Work, and receive a license fee or other royalty attributable solely to the Brand. In either of such events the Author is not entitled to receive any compensation unless, in the Publisher's sole discretion, the Publisher licenses or otherwise exploits the Brand in combination with separate author created materials, in which case the Author may receive such financial participation as set forth in a separate Addendum which shall be attached hereto and incorporated herein.

**Author's Property**

12.    The Author shall retain a copy of the Manuscript of the Work, including any illustrative material. The Publisher may, after publication of the Work, dispose of the original Manuscripts, illustrative material and proofs. The Publisher will, however, on written request made prior to publication, make reasonable efforts to return any original illustrative material supplied by the Author. The Publisher shall not be responsible for loss of or damage to any property of the Author.

**Revised Editions**

13.    If the Publisher determines that a revision of the Work is desirable, the Publisher shall, unless the Author is deceased, request the Author to prepare the revised edition and the Author shall advise the Publisher within twenty (20) days whether the Author will do so in accordance with the schedule set forth by the Publisher. If the Author advises the Publisher that the Author will prepare the revised edition, the Author shall diligently proceed with the revision, keep the Publisher advised of the Author's progress, and deliver the complete Manuscript to the Publisher on the scheduled due date.

If the Author does not participate in the revision, or if the Author does not diligently proceed with the revision, the Publisher shall have the right to arrange with others for the preparation of the revised edition. In such case, the Publisher shall have the right to deduct from the Author's royalties any fees or royalties paid to the reviser(s) provided that the Author's royalties shall not be reduced by more than fifty percent (50%) for the first such revised edition. No royalties shall be paid to the Author with respect to further revised editions not prepared by the Author. The revised editions may be published under the same title and may refer to the Author by name, but credit may be given to the reviser(s) in the revised edition(s) and in advertising and promotional material with respect thereto.

Except as otherwise provided herein, the provisions of this Agreement, including royalty terms (but excluding the advance provided herein), shall apply to each successive revised edition as though it were the first edition.

**Option**

14.    Intentionally omitted

**Warranty**

15.    The Author represents and warrants that: the Work is original except for material for which written third party permissions have been obtained; it has not previously been published and is not in the public domain; the Author has the right to enter into this Agreement and owns and can convey the rights granted to the Publisher; the Work contains no libelous or unlawful material or instructions that may cause harm or injury; it does not infringe upon or violate any copyright, trademark, trade secret or other right or the privacy of others; and statements in the Work asserted as fact are true or based upon generally accepted professional research practices. The Author will hold the Publisher and its distributors and licensees harmless against all liability, including expenses and reasonable counsel fees, from any claim which if sustained would constitute a breach of the foregoing warranties. Each party will give prompt notice to the other if any claim is made and the Author will cooperate with the Publisher, who will direct the defense thereof. Pending any settlement, final resolution or clear abandonment of a claim, the Publisher may engage counsel of its choice and may withhold in a reasonable amount sums due the Author under this or any other agreement between the parties. The provisions of this paragraph will survive termination of this Agreement.

**Infringement**

16.    If the copyright in the Work or in any derivative work is infringed, the Publisher shall have the right, but not the obligation, to pursue a claim for infringement in such manner as it deems appropriate. If it does so, the Publisher shall recoup the expense incurred from any recovery, and the balance of the proceeds, if any, shall be divided equally between the Author and the Publisher. If the Publisher does not pursue such a claim after the

Page #6
WPI 2002
Single Author

Author's request to do so, the Author, at the Author's expense, shall have the right to prosecute an action, and any recovery shall belong solely to the Author.

**Termination by Author**

**17.** **(a)** The Author may terminate this Agreement by written notice to the Publisher if the Publisher does not reply to the Author's request for notification pursuant to Paragraph 2(d) above, or if the Publisher does not publish the Work as specified in Paragraph 3 above, for reasons other than as specified therein.

**17.** **(b)** The Author may terminate this Agreement prior to publication by written notice to the Publisher if a voluntary petition in bankruptcy under Title 11, United States Code is filed by the Publisher or an involuntary petition under Title 11, United States Code is filed against the Publisher and an order for relief is entered.

**17.** **(c)** Upon termination of this Agreement by the Author pursuant to subparagraph (a) or (b) above, the Publisher agrees to revert to the Author all rights herein granted by the Author (except for Title of the Work and Branding as specified in Paragraph 11 above) and the Author shall retain as liquidated damages in lieu of any other damages or remedies, any payments received by the Author from the Publisher with respect to the Work.

**Available for Purchase**

**18.** If the Publisher, in its sole discretion decides that sales of the Work are not sufficiently profitable to keep it "available for purchase" and the Publisher does not, within six (6) months after receipt of a written request from the Author to otherwise make it available for purchase or contract therefore for purchase within a reasonable time, all rights granted to the Publisher shall, at the end of the six-month period revert to the Author, subject however, to any option, license, or contract granted to third parties prior to the date of the reversion, and further subject to the Publisher's right to continue to publish and sell any then-existing derivative work based on the Work, all subject to the rights of the Author and the Publisher to their respective shares of the proceeds from such license or use under this Agreement. The Work shall be deemed to be "available for purchase" for this purpose if any edition of the Work is on sale or is otherwise available in any medium or language, or is under option or contract for publication under the Publisher's or any other imprint, or if the Publisher or its licensee offers for sale copies of the Work to be produced, manufactured or electronically transmitted, upon receipt of orders therefor.

**Termination by the Publisher**

**19.** **(a)** The Publisher may terminate this Agreement prior to publication in the event:

**(1)** the Author fails to deliver a complete, satisfactory Manuscript pursuant to Paragraph 2(a) above by the Due Date or fails or refuses to make the changes or edits requested by the Publisher in a timely manner pursuant to Paragraphs 2(b) and (c) above; or

**(2)** the Publisher does not exercise its exclusive right to publish the Work pursuant to Paragraph 2(e) or 3(c) above; or

**(3)** publication may result in legal liability unacceptable to the Publisher in its reasonable judgment.

**19.** **(b)** Upon termination of this Agreement by the Publisher pursuant to Paragraph 19(a) above, and except as provided in Paragraph 3(c), the Author shall promptly repay to the Publisher any advances or other payments made to the Author hereunder. Upon receipt of such repayment, the Publisher shall revert to the Author all rights herein granted by the Author and the Publisher shall have no further obligation or liability hereunder.

**General**

**20.** **(a)** The engagement of the Author is personal and the rights hereunder granted to the Author are not assignable nor may the obligations imposed be delegated without the prior written consent of the Publisher; provided however, that the Author may assign any sums due to the Author hereunder without the Publisher's consent.

**20.** **(b)** Except as provided in the preceding subparagraph, this Agreement shall inure to the benefit of the heirs, successors, administrators, and permitted assigns of the Author and the subsidiaries, successors, and assigns of the Publisher.

**20.** **(c)** All notices to be given by either party hereunder shall be in writing and shall be sent to the Author at the Author's address as it is set forth in this Agreement unless such address has been changed by proper written notice, or to the Publisher, addressed to the attention of the Senior Vice President & General Counsel.