UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL BENJAMIN GILBERT,

        Plaintiff,

    v.

ANTHROPIC PBC,

        Defendant.

Civil Action No. 3:26-cv-30081-MGM

**FIRST AMENDED COMPLAINT**

Daniel Benjamin Gilbert ("Plaintiff") files this First Amended Complaint against Anthropic PBC ("Defendant") and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, arising from Defendant's unauthorized reproduction of Plaintiff's copyrighted book, *Hacking World of Warcraft*, and Defendant's downloading, storage, and retention of unauthorized copies of the Work as part of a permanent library of pirated books.

**PARTIES**

2. Plaintiff is an individual residing in Easthampton, Massachusetts.

3. Plaintiff is a co-author of *Hacking World of Warcraft* and a beneficial owner of the exclusive right to reproduce copies of that work within the meaning of 17 U.S.C. § 501(b).

4. Defendant is a Delaware public benefit corporation with its principal place of business in San Francisco, California.

1

**JURISDICTION AND VENUE**

5.  This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.  This Court may exercise personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(1)(A), Massachusetts General Laws chapter 223A, § 3(a), § 3(b), and § 3(d), and consistent with due process.

7.  Defendant purposefully directs commercial activities toward Massachusetts and purposefully avails itself of the privilege of conducting business in Massachusetts by offering and providing subscription-based products and services to Massachusetts residents and businesses, entering into ongoing contractual relationships with Massachusetts customers, supplying services to customers located in Massachusetts, accepting payments from Massachusetts customers, and deriving revenue from those Massachusetts activities.

8.  Plaintiff's claim arises out of and relates to Defendant's Massachusetts-directed business activities. Defendant assembled, reproduced, stored, and retained its library of pirated books as a commercial resource for the development, training, improvement, and operation of Defendant's Claude large language models and related commercial products and services, which it markets, sells, and provides to customers in Massachusetts and from which it derives revenue in Massachusetts.

9.  On information and belief, the Work was among the unauthorized copies Defendant downloaded, stored, and retained within that pirated-book library.

10.  On information and belief, substantially all of Defendant's revenue, including its Massachusetts revenue, derives from the Claude models and the products and services built on them; the enterprise through which Defendant reproduced and retained the Work without

2

authorization is therefore the same enterprise through which it conducts its Massachusetts business.

11.    Defendant's infringement is also contemporaneous with that business: since Claude's first public release in March 2023, Defendant has continuously marketed, sold, and provided Claude products and services to Massachusetts customers while retaining, and making additional copies of, the unauthorized copies of the Work, as alleged in Paragraphs 59 and 62.

12.    Plaintiff's claim is for Defendant's unauthorized downloading and reproduction of the Work, not for model training; the library containing the Work served Defendant's enterprise as a general-purpose resource whether or not the Work or the LibGen collection appeared in the training corpus of any commercially released model.

13.    Defendant's unauthorized reproduction of the Work substituted unauthorized copying for lawful licensing and injured Plaintiff's royalty-based beneficial ownership interest in Massachusetts, where Plaintiff resides, has received his royalty payments on the Work since late 2009, and would have received his royalty share of any licensing revenue from Defendant.

14.    Defendant regularly transacts and solicits business in Massachusetts and derives substantial revenue from goods used or consumed, and services rendered in Massachusetts.

15.    The exercise of personal jurisdiction over Defendant in this District is reasonable and comports with traditional notions of fair play and substantial justice, given Defendant's continuous and deliberate exploitation of the Massachusetts market, Plaintiff's residence and injury in Massachusetts, and Massachusetts' interest in adjudicating injuries to its residents.

16.    Defendant is registered to do business in Massachusetts with the Secretary of the Commonwealth (ID No. 001603523) and has appointed an agent for service of process in Massachusetts. Defendant is subject to personal jurisdiction in this District for the reasons

alleged here and in Paragraphs 6–15 and therefore may be found in this District for purposes of 28 U.S.C. § 1400(a).[1]

17.    Venue is proper in this District under 28 U.S.C. § 1400(a) because Defendant may be found in this District, including because Defendant is subject to personal jurisdiction here.

## FACTUAL ALLEGATIONS

### A.    The Work and Plaintiff's Interest

18.    Plaintiff is a co-author of the book *Hacking World of Warcraft* (the "Work").

19.    The Work was created in 2006 and 2007 and first published in the United States on May 18, 2007.

20.    The Work is an original work of authorship fixed in a tangible medium of expression.

21.    The Work was registered with the United States Copyright Office under Registration No. TX 7-204-548 effective July 7, 2008.[2]

22.    The Copyright Registration Certificate identifies Plaintiff Daniel Gilbert and James Whitehead II ("Whitehead") as authors, and Wiley Publishing, Inc. as the copyright claimant by written agreement.[3]

23.    Wiley Publishing, Inc.'s successor in interest is John Wiley & Sons, Inc. (together, "Wiley").

24.    Under a Publishing Agreement dated July 20, 2006, Plaintiff granted Wiley the exclusive rights in the Work, and Wiley agreed to pay royalties to Plaintiff from the sale and licensing of the Work.[4]

---

[1] Massachusetts Secretary of the Commonwealth, Corporations Division, Business Entity Summary for Anthropic PBC, *archived at* https://perma.cc/Z8VU-R8EA.
[2] Ex. A, Copyright Registration Certificate.
[3] *Id.*
[4] Ex. B, Publishing Agreement (Redacted) at 1–3.

25.     A January 29, 2007 Amendment to the Publishing Agreement added Whitehead as a co-author of the Work.[5]

26.     A separate May 29, 2007 Amendment to the Publishing Agreement provided that 100% of the advance would be paid solely to Plaintiff and that, after the advance was earned out, royalties accruing to the authors would be divided 85% to Plaintiff and 15% to Whitehead.[6]

27.     Wiley paid Plaintiff the advance provided under the Publishing Agreement; the advance was subsequently earned out; and Wiley has since paid, and remains obligated to pay, royalties to Plaintiff from the sale and licensing of the Work in accordance with the Publishing Agreement and its Amendments.

28.     Because Plaintiff granted Wiley exclusive rights in the Work in exchange for contractual royalty rights, he has continuously retained a royalty-based beneficial ownership interest in those exclusive rights, including the exclusive reproduction right.

29.     As a beneficial owner, Plaintiff is entitled to sue for infringement of that exclusive right under 17 U.S.C. § 501(b).

30.     Defendant's unauthorized reproduction of the Work injured Plaintiff's royalty-based beneficial ownership interest by substituting unauthorized copying for lawful licensing.

31.     If Defendant had obtained lawful permission to acquire, reproduce, store, and retain the Work, that permission could have generated licensing revenue or other compensation from which Plaintiff would have been entitled to receive his contractual royalty share. Under Paragraph 5(a)(5) of the Publishing Agreement, Wiley is obligated to pay the Author ten percent

---

[5] Ex. C, January 29, 2007 Amendment to the Publishing Agreement (Redacted).
[6] Ex. D, May 29, 2007 Amendment to the Publishing Agreement.

of Wiley's net receipts "from sales or licenses of the Work or materials from the Work in electronic form, whether directly by the Publisher or indirectly through or with others."[7]

32.     Paragraph 16 of the Publishing Agreement provides: "If the copyright in the Work or in any derivative work is infringed, the Publisher shall have the right, but not the obligation, to pursue a claim for infringement in such manner as it deems appropriate. If it does so, the Publisher shall recoup the expense incurred from any recovery, and the balance of the proceeds, if any, shall be divided equally between the Author and the Publisher. If the Publisher does not pursue such a claim after the Author's request to do so, the Author, at the Author's expense, shall have the right to prosecute an action, and any recovery shall belong solely to the Author."[8]

33.     Under Paragraph 16 of the Publishing Agreement, Plaintiff notified Wiley in writing of the infringement claim, asked Wiley to advise within thirty days whether it intended to pursue the claim, and stated that if Wiley did not, he would proceed as provided in Paragraph 16. Wiley received the notice on or before January 21, 2026, the date printed on the return receipt.[9]

34.     Paragraph 16 sets out the contractual procedure between Plaintiff and Wiley for notice, prosecution, expense, and allocation of any recovery if Wiley does not pursue an infringement claim. Plaintiff satisfied all of its conditions before bringing this action: he gave Wiley written notice of the infringement claim; Wiley did not pursue the claim, and did not communicate any intention to pursue it, within the thirty days stated in the notice or at any time since; and Plaintiff then filed this action at his own expense.

35.     On June 23, 2026, Wiley conveyed to Plaintiff the response of its litigation counsel: Wiley is not able to sign documents provided by authors in relation to their own potential claims, and is not able to take a position on whether Plaintiff can file his own lawsuit.

---

[7] Ex. B at 3.
[8] Ex. B at 6.
[9] Ex. E, Plaintiff's Notice of Infringement to Wiley and Proof of Receipt.

Wiley also stated that it had "already submitted [its] own claim as part of the settlement process," without identifying any work. Whether or not any such claim covered the Work, it could yield no payment or recovery for the Work, which had been excluded from the settlement by Plaintiff's timely and valid opt-out, received on January 8, 2026, before Wiley received Plaintiff's request, as alleged in Paragraphs 54–57.[10]

36.    On June 23, 2026, Plaintiff provided Wiley with formal written notice of this pending action, together with a copy of the complaint, by email and by certified mail, return receipt requested. Wiley confirmed receipt of the email notice that same day and referred it to its legal department, and the return receipt for the mailed notice was received.[11] As of the filing of this First Amended Complaint, Wiley has not sought to join or intervene in this action and has not objected to it.

37.    Because Wiley declined to pursue the claim after Plaintiff's request, as between Plaintiff and Wiley any recovery in this action, which Plaintiff prosecutes at his own expense, belongs solely to the Author, and Wiley has no contractual entitlement to share in it.

38.    Whitehead has confirmed in a signed declaration that he does not object to Plaintiff pursuing this lawsuit in Plaintiff's own name and on Plaintiff's own behalf, that Plaintiff is not acting as his representative or agent in this lawsuit, and that he does not contend that Plaintiff lacks authority to pursue Plaintiff's own rights arising from the Work.[12]

39.    Plaintiff brings this action only in his own name and on his own behalf, and seeks recovery only for infringement of his beneficial ownership interest in the Work under 17 U.S.C. § 501(b). He does not represent Whitehead or Wiley, act as agent or counsel for either, or assert any claim on behalf of either.

---

[10] Ex. F, Communication from Wiley's Legal Counsel.
[11] Ex. G, Plaintiff's Notice of This Action to Wiley and Proof of Receipt.
[12] Ex. H, Declaration of Non-Objection by James Whitehead II.

40.      Whitehead, a beneficial owner of the Work, has covenanted not to assert, commence, or pursue against Defendant any claim arising from the alleged unauthorized downloading, reproduction, storage, or retention of the Work.[13]

**B.      Persons Not Joined (Fed. R. Civ. P. 19(c))**

41.      Without conceding that any absent person is a required party under Rule 19(a), Plaintiff states as follows under Federal Rule of Civil Procedure 19(c).

42.      Wiley, the legal owner of the copyright in the Work, has not been joined as a party. As alleged in Paragraphs 33–37, Wiley received written notice of Plaintiff's infringement claim and of this pending action; on information and belief, apart from whatever claim Wiley stated it submitted in the *Bartz* settlement process, as alleged in Paragraph 35, which could yield nothing as to the Work after the Work's exclusion, it has not pursued or asserted any claim against Defendant arising from the Work and has not objected to this action. Plaintiff has voluntarily provided Wiley the written notice of this action contemplated by 17 U.S.C. § 501(b), and seeks recovery only for infringement of the exclusive reproduction right of which he is a beneficial owner.

43.      Without conceding that Wiley is a required party, if the Court were to so conclude, Wiley is subject to service of process, and its joinder would be feasible and would not destroy jurisdiction. Plaintiff does not oppose, and will promptly comply with, any order under 17 U.S.C. § 501(b) or Rule 19 requiring notice to or joinder of Wiley.

44.      Whitehead, the only other beneficial owner of the exclusive reproduction right in the Work known to Plaintiff, has not been joined as a party. As alleged in Paragraphs 38 and 40, he has declared under penalty of perjury that he does not object to Plaintiff pursuing this lawsuit in Plaintiff's own name and on Plaintiff's own behalf, and he has covenanted not to assert,

---

[13] Ex. I, Covenant Not to Sue Anthropic PBC by James Whitehead II.

8

commence, or pursue any claim against Defendant arising from the alleged unauthorized downloading, reproduction, storage, or retention of the Work.

### C.    Defendant's Pirated Book Library

45.    On information and belief, Defendant assembled a large central library of digitized books as an internal resource for its own commercial research, development, operations, products, and services.[14]

46.    In 2021 and 2022, Defendant downloaded millions of pirated books from online pirate libraries, including LibGen and PiLiMi.[15]

47.    In June 2021, Defendant used the BitTorrent protocol to download at least five million books peer-to-peer from decentralized copies of LibGen, which it knew contained pirated books. In July 2022, Defendant likewise used BitTorrent to download at least two million books from PiLiMi, which it also knew contained pirated books.[16]

48.    The LibGen and PiLiMi downloads consisted of full-text ebooks or scans of books in formats including .pdf, .txt, and .epub, together with bibliographic metadata including title, author, and ISBN.[17]

49.    Defendant retained the pirated books in a central "research library" or "generalized data area" as a permanent, general-purpose resource. Defendant planned to "store everything forever" and saw "no compelling reason" to delete any books.[18]

---

[14] *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA, ECF No. 231 at 1–2, 4–5 (N.D. Cal. June 23, 2025) ("Fair Use Order") (Defendant sought "to amass a central library of 'all the books in the world' to retain 'forever'").

[15] Fair Use Order at 2–3; *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA, ECF No. 244 at 1–3 (N.D. Cal. July 17, 2025) ("Class Certification Order").

[16] Fair Use Order at 3; Class Certification Order at 2–3.

[17] Fair Use Order at 3; Class Certification Order at 2, 4, 15–16.

[18] Fair Use Order at 2, 4–5; Class Certification Order at 3.

50.   On information and belief, no license or authorization to download, reproduce, store, or retain pirated copies of the Work was granted by Plaintiff, Wiley, or any other person or entity authorized to license the Work.

51.   On August 19, 2024, the plaintiffs in *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.) ("*Bartz*"), commenced a class action against Defendant asserting claims for infringement of the exclusive right to reproduce copies of books that Defendant downloaded. The parties in *Bartz* subsequently reached a class-wide settlement, preliminarily approved by the court (the "*Bartz* settlement"), administered by the Anthropic Copyright Settlement Administrator (the "Settlement Administrator"). The list of works covered by the *Bartz* settlement (the "*Bartz* Works List") was made searchable through the settlement website maintained by the Settlement Administrator.[19]

**D.   Defendant's Infringement of the Work**

52.   The Work appears on the *Bartz* Works List, which covers the versions of LibGen and PiLiMi downloaded by Defendant. The Work was identified by title, authors, registration number, and ISBN.[20]

53.   The Work was added to LibGen on June 4, 2011 and last modified on December 21, 2019, before Defendant downloaded the relevant LibGen collection in June 2021. The LibGen file of the Work bears MD5 hash bf40048310daeb9aa562b6b70b0944e3.[21]

---

[19] *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA, ECF No. 1 (N.D. Cal. Aug. 19, 2024) (class-action complaint); *Bartz*, ECF No. 363-3 (Sept. 5, 2025) ("Settlement Agreement") (preliminary approval, final approval pending); Settlement Agreement §§ 1.33, 1.36–1.37 at 8–9 (Settlement Administrator, Settlement Website, and Works List); Class Certification Order at 30–31.

[20] Ex. J, *Bartz* Works List Entry; Settlement Agreement § 1.37 at 9 (defining the Works List to include, for each work, "the title, author(s), publisher, an ISBN and/or ASIN, and United States copyright registration number").

[21] Ex. K, LibGen Screenshot, *archived at* https://perma.cc/CQ6J-EBYT; Anna's Archive Record for *Hacking World of Warcraft*, *archived at* https://perma.cc/G8WC-W5YF.

54.     Plaintiff opted the Work out of the *Bartz* settlement and is not bound by it.

55.     Plaintiff submitted the opt-out request to the Settlement Administrator by email and by letter dated January 9, 2026, the letter sent by certified mail, return receipt requested. Plaintiff received an automated reply on January 9, 2026, at 2:46 a.m. Eastern Standard Time (11:46 p.m. Pacific Standard Time on January 8, 2026) at his email address, loglow@gmail.com.[22]

56.     The Settlement Administrator confirmed by email to that same address that Plaintiff's opt-out request was timely and valid, that it was received on January 8, 2026, and that the Work was included in the request.[23]

57.     Under § 4.14 of the *Bartz* Settlement Agreement, any person or entity in the class "can exclude a work or multiple works from inclusion in the Settlement" by submitting a valid request for exclusion, and settlement payments are distributed only on a per-work basis for works included in the settlement.[24] Plaintiff submitted a timely and valid opt-out request for the Work.

58.     Plaintiff's opt-out of the Work did not reduce the amount Defendant is obligated to pay under the settlement because there is no reversion of settlement funds and any unclaimed funds will be distributed to class members pro rata.[25]

59.     Based on the Work's appearance on the *Bartz* Works List and the LibGen record for the Work described in Paragraphs 52–53, and on information and belief, Defendant reproduced one or more unauthorized copies of the Work, which it downloaded, stored, and retained as part of its pirated book library. On information and belief, Defendant retains those

---

[22] Ex. L, Plaintiff's Opt-Out Submission Letter and Proof of Receipt; Settlement Agreement §§ 1.9, 4.14 at 3, 20–21; Class Certification Order at 11, 24.

[23] Ex. M, Opt-Out Confirmation Email.

[24] Settlement Agreement § 4.14 at 20–21; *id.* § 1.35 at 9; *see also* Anthropic Copyright Settlement, Frequently Asked Questions (guidance published by the Settlement Administrator), *archived at* https://perma.cc/T7YC-ZWA3.

[25] Settlement Agreement § 1.34 at 8–9.

copies as of the filing of this First Amended Complaint: the *Bartz* settlement requires destruction of the pirated files only after final judgment, which has not been entered, and Defendant remains subject to litigation-preservation obligations in *Bartz* and in this action.[26]

60.    Defendant's infringement was willful because Defendant knew or had reason to know that LibGen contained unauthorized copies of copyrighted books, yet used peer-to-peer piracy networks to download millions of books from that source, reproduced and retained those books in a central library, and kept them as a general-purpose internal resource. Defendant had many places from which it could have purchased books, but downloaded pirated copies instead to avoid "legal/practice/business slog," in the words of its chief executive officer.[27]

61.    Defendant infringed the exclusive reproduction right in the Work, in which Plaintiff holds a beneficial ownership interest, by reproducing unauthorized copies of the Work, which it downloaded from LibGen and then stored and retained in its pirated book library.

62.    On information and belief, Defendant reproduced the Work one or more additional times after January 8, 2022, including after May 26, 2023, through copies made in maintaining, backing up, migrating, and indexing the library in which it retained the Work. Each such reproduction was a separate act of infringement.[28]

---

[26] Fair Use Order at 2–5; Class Certification Order at 15–16, 30–31; Ex. J; Settlement Agreement § 2.2 at 13 (destruction of the pirated files required only within thirty days of final judgment, and subject to legal preservation obligations).

[27] Fair Use Order at 2–3 (Defendant "knew" the LibGen and PiLiMi books "had been pirated"); Class Certification Order at 2–3.

[28] Fair Use Order at 31–32 (library copies "were retained even when no longer serving as sources for training copies, 'hundreds of engineers' could access them to make copies for other uses, and engineers did make other copies"; Defendant "has dodged discovery on these points"; "Nothing is foreclosed as to any other copies flowing from library copies for uses other than for training LLMs"); Fair Use Order at 2, 4–5 (permanent, general-purpose resource; tools for searching and accessing the library).

### E.      Discovery of Defendant's Infringement

63.      Plaintiff did not discover, and in the exercise of reasonable diligence could not have discovered, Defendant's infringement of the Work more than three years before this action was filed on May 26, 2026.

64.      Defendant's infringement was not public-facing, such as offering unauthorized copies for sale or displaying the Work online. Rather, it involved the downloading, reproduction, storage, and retention of full-text pirated books inside Defendant's private internal systems and central library. Those internal copies were not visible to Plaintiff, and he had no access to Defendant's internal files, metadata, datasets, backup systems, or records.

65.      Before May 26, 2023, Plaintiff had no actual knowledge that Defendant had downloaded, reproduced, stored, retained, or otherwise used the Work, and no information reasonably suggesting that Defendant had copied this particular Work, that the Work was present in any collection Defendant downloaded, or that Defendant maintained an internal copy of it.

66.      To the extent there was general public discussion concerning online piracy, shadow libraries, LibGen, PiLiMi, copyrighted books, or the bulk acquisition of published works, that discussion did not reveal that Defendant had copied Plaintiff's Work, that Defendant had downloaded particular versions of LibGen or PiLiMi containing the Work, that Defendant retained those copies in its internal library, or that Defendant possessed metadata sufficient to identify the Work by title, author, ISBN, or copyright registration information.

67.      On information and belief, no publicly available information disclosed that Defendant had downloaded the LibGen or PiLiMi collections before *Bartz v. Anthropic PBC* was filed on August 19, 2024, and the specific facts concerning Defendant's downloading,

13

reproduction, storage, and retention of those collections first became publicly available through filings and orders in *Bartz* in 2025. Each of those dates falls after May 26, 2023.

68.     Plaintiff first learned facts sufficient to investigate Defendant's copying of the Work from the court-approved class notice of the *Bartz* settlement, which the Settlement Administrator emailed to him on December 1, 2025. Before that date, he was not aware of the *Bartz* settlement or of any allegation that Defendant had downloaded or retained pirated book collections, including LibGen or PiLiMi.

69.     On or about December 1, 2025, Plaintiff clicked the link in that email to visit the settlement website. Through that website, he accessed and searched the *Bartz* Works List and confirmed that the Work appeared on it. Exhibit J shows the same search, run again on May 25, 2026 for purposes of this action; the Work's entry was the same entry Plaintiff located on or about December 1, 2025.

70.     After confirming that the Work appeared on the *Bartz* Works List, Plaintiff submitted a claim form on December 4, 2025. After further investigation of his rights, he withdrew the claim and requested exclusion of the Work by the opt-out dated January 9, 2026, described in Paragraphs 55–56.

71.     Plaintiff then acted promptly to preserve and pursue his rights: he opted the Work out of the *Bartz* settlement by the request dated January 9, 2026, described in Paragraphs 55–56; by a separate letter also dated January 9, 2026, he contacted Wiley concerning the Work and his rights, as alleged in Paragraph 33; by letter dated January 31, 2026, he wrote to Defendant concerning alleged infringement of the Work; and he filed this action on May 26, 2026.

72.     Plaintiff's claim is timely. As alleged in Paragraphs 63–71, the claim did not accrue until Plaintiff discovered Defendant's infringement of the Work, which he could not have

14

discovered earlier in the exercise of reasonable diligence. Plaintiff first learned facts sufficient to investigate Defendant's copying of the Work on or about December 1, 2025, and filed this action on May 26, 2026, within three years of that discovery.

73.     In the alternative, if the claim accrued when Defendant copied the Work, the limitations period was tolled until Plaintiff's discovery because the infringement was self-concealing and Defendant never disclosed it, as alleged in Paragraphs 64–67.

74.     The reproductions after May 26, 2023 alleged in Paragraph 62 occurred within three years of the filing of this action and are independently timely.

75.     The filing of *Bartz* on August 19, 2024 tolled the limitations period for Plaintiff, a class member, until the Work's timely exclusion on January 8, 2026, as alleged in Paragraphs 54–56; the reproductions after January 8, 2022 alleged in Paragraph 62 are therefore also independently timely.

## CLAIM FOR RELIEF
### Copyright Infringement
### (17 U.S.C. § 501)

76.     Plaintiff repeats and realleges Paragraphs 1–75.

77.     Plaintiff is a beneficial owner of the exclusive reproduction right in the Work and is entitled to sue for its infringement under 17 U.S.C. § 501(b), as alleged in Paragraphs 27–29.

78.     The Work was registered with the United States Copyright Office effective July 7, 2008, before Defendant's infringement of the Work commenced in June 2021. Plaintiff's claim is therefore not subject to the bar of 17 U.S.C. § 412, and Plaintiff is entitled to elect statutory damages under 17 U.S.C. § 504(c).

79.     Defendant infringed Plaintiff's beneficial ownership interest in the exclusive reproduction right under 17 U.S.C. § 106(1), actionable under 17 U.S.C. § 501, by reproducing

unauthorized copies of the Work, which Defendant downloaded and then stored and retained as part of a centralized library of pirated books.

80.     Defendant's infringement was willful. Defendant knew that LibGen and PiLiMi contained pirated books when it downloaded them, as alleged in Paragraph 47, and nonetheless retained the pirated copies as a permanent, general-purpose library resource, as alleged in Paragraph 49.

81.     Plaintiff elects to recover statutory damages under 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and grant the following relief:

A.     A judgment that Defendant infringed the exclusive reproduction right in the Work in which Plaintiff holds a beneficial ownership interest;

B.     Statutory damages under 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement;

C.     Injunctive relief under 17 U.S.C. § 502 to the extent permitted by law;

D.     Impoundment, destruction, or other disposition of infringing copies and related materials under 17 U.S.C. § 503 to the extent permitted by law;

E.     Full costs pursuant to 17 U.S.C. § 505, including reasonable attorney's fees to the extent permitted by law for any attorney who may hereafter appear on Plaintiff's behalf;

F.     Prejudgment and post-judgment interest to the extent permitted by law; and

G.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: July 7, 2026                              Respectfully submitted,

                                                 */s/ Daniel B. Gilbert*
                                                 Daniel B. Gilbert
                                                 48 Parsons St Unit 6
                                                 Easthampton, MA 01027
                                                 (413) 265-1600
                                                 daniel.b.gilbert@gmail.com

                                                 *Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

I certify that on July 7, 2026, I caused this First Amended Complaint to be electronically filed with the Clerk of the Court using the CM/ECF system, which will simultaneously provide a copy of such filing to parties and counsel of record to their registered email addresses.

                                                 */s/ Daniel B. Gilbert*
                                                 Daniel B. Gilbert

17