**EXHIBIT B**

Publishing Agreement (Redacted)

0470-110023

# WILEY PUBLISHING, INC.

**AGREEMENT** made this 20th day of July 2006, between Daniel Gilbert, whose address is 38 Autumn Lane Amherst, MA 01002 (the **"Author"**) and Wiley Publishing, Inc., a Wiley company, 111 River Street, Hoboken, New Jersey 07030-5774 (the **"Publisher"**) with respect to a Work tentatively titled: *Hacking World of Warcraft* (the **"Work"**).

The Publisher and the Author wish to work together to achieve the professional standards and success that they each desire from the Work and agree as follows:

**Rights**

1.    The Author hereby grants to the Publisher during the full term of copyright and all extensions thereof the full and exclusive rights comprised in the copyright in the Work, including any "Supplementary Materials" (as defined in Paragraph 2(a) below) and any revised editions, including but not limited to the right, by itself or with others, throughout the world, to print, publish, republish, distribute, display and transmit the Work in whole or in part and to prepare, publish, distribute and transmit derivative works based thereon, in English and in other languages, in all media of expression now known or later developed, and to license or permit others to do so.

**Manuscript**

2.    (a)    The Author agrees to prepare and submit the Manuscript of the Work, to consist of approximately 400 pages not later than December 20, 2006, and on the following schedule unless the Publisher has agreed to extend the time in writing (the "Due Date").

(1) A detailed table of contents, a description of its subject matter and specifications for its proposed Manuscript ("Manuscript") no later than August 1, 2006. The Publisher will promptly notify the Author of any changes to the table of contents that are necessary in order to obtain the Publisher's approval thereof.

(2) The first twenty-five percent (25%) of the Manuscript and related material by August 30, 2006;

(3) The second twenty-five percent (25%) of the Manuscript and related materials by September 30, 2006;

(4) The third twenty-five percent (25%) of the Manuscript and related materials by October 30, 2006;

(5) The final twenty-five percent (25%) of the Manuscript and related materials by November 30, 2006;

(6) All additional materials that the Publisher deems necessary to publish the Work by December 20, 2006. The Publisher will promptly notify the Author in writing of any such necessary additional materials.

The final Manuscript shall be submitted in the electronic format specified by the Publisher, or in the Word template supplied by the Publisher, and shall be complete and satisfactory to the Publisher in organization, form, content, and style, accompanied by a table of contents and any additional material listed below (individually and collectively the "Supplementary Materials" or the "Materials"), which shall be considered part of the Work:

| Material | Due Date (if different from above) |
|---|---|
| Any source code or links for website download | December 20, 2006 |

If the Author fails to supply any Supplementary Materials or illustrative material on or before the Due Date, the Publisher shall have the right, but not the obligation, to obtain them and charge the reasonable cost against any sums due to the Author.

Illustrative material submitted as part of the final Manuscript shall be in the form of black and white drawings, photographs or high resolution computer renderings in a form suitable for direct use with or without redrawing, lettering or retouching by the Publisher or in another form acceptable to the Publisher. In the alternative, at the Publisher's option, illustrative materials shall be submitted separately in native graphic file format, not imbedded in the Word template.

The Author shall, at the Author's expense, submit with the final Manuscript of the Work, written third party permissions, on a form approved by the Publisher, to use any copyrighted material which the Author incorporates in the Work.

If the Publisher determines that an index to the Work is desirable, the Publisher shall prepare or engage a third party to prepare the index in such a manner as the Publisher deems appropriate and pay the cost thereof.

**2.    (b)**

(1)    If the Author fails to timely create and deliver acceptable Materials in conformity with one or more Manuscript delivery milestones specified in the schedule of Paragraph 2(a) above, the Publisher may engage another writer to assist in completing the Work or make other arrangements as the Publisher deems acceptable to keep the Work on schedule or make the Manuscript complete and satisfactory. In such event the reasonable cost of such arrangements may be charged against any sums due to the Author hereunder. If, at the twenty five percent (25%) delivery Due Date or any time thereafter, the Manuscript is deemed unacceptable by the Publisher or has not been timely delivered, the Publisher may terminate the Agreement pursuant to Paragraph 19 below.

(2)    If the Author delivers the final Manuscript on or before the final Due Date, the Publisher shall, within ninety (90) days after such delivery, notify the Author whether the Manuscript is, in the Publisher's judgment, complete and satisfactory and, if it is not, request changes that would make the Manuscript satisfactory to the Publisher.

(3)    If the Author does not make the changes requested by the Publisher within ten (10) days after receipt of such request, or if, notwithstanding such changes, the Manuscript is not, in the Publisher's judgment, complete and satisfactory, the Publisher may terminate this Agreement pursuant to Paragraph 19 below or make such other arrangements as the Publisher deems advisable to make the Manuscript complete and satisfactory, in which event the reasonable costs of such arrangements may be charged against any sums due to the Author.

(4)    In the event the Publisher determines that the necessary revisions would be so extensive and fundamental that a satisfactory and timely revision would not be feasible, the Publisher shall have the right to deem the Manuscript unsatisfactory without requesting changes and to terminate the Agreement pursuant to Paragraph 19 below.

**2.    (c)**    Although the Publisher will review and edit the Manuscript, the Author is ultimately responsible for the Work's accuracy and completeness. Within ten (10) days after the Publisher's delivery of review pages to the Author, the Author will return them proofed for accuracy and completeness, together with thorough and accurate responses to any queries or questions the Publisher has communicated to the Author with respect thereto. If the Author does not or is unable to return the review pages within ten (10) days, based on its publication deadline the Publisher may make appropriate changes and proceed with production. At its own cost the Publisher will correct discrepancies between the review pages it submits to the Author and the edited Manuscript approved by the Publisher and the Author. The Publisher will bear the costs of additional alterations after page layout which, based on the Author's advice to the Publisher, are necessary to ensure technical accuracy. If however, such alterations amount to more than ten percent (10%) of the cost of original composition, the Publisher will charge the cost of such alterations against the Author's royalty account.

**2.    (d)**    If the Author does not receive notification from the Publisher pursuant to Paragraph 2(b) above within the prescribed period after timely delivery of the Manuscript, the Author may request the Publisher in writing to notify the Author whether the Manuscript is complete and satisfactory to the Publisher and, if it is not, to indicate what changes would make it complete and satisfactory. If the Publisher does not respond to the Author's request within thirty (30) days after receipt of such request, the Author may terminate this Agreement pursuant to Paragraph 17 below.

**2.    (e)**    If the Author does not submit the final Manuscript on or before the Due Date, the Publisher shall have the exclusive right but not the obligation to publish the Work. In such case, the Author shall submit the final Manuscript to the Publisher upon completion and the Publisher shall have ninety (90) days from the date of receipt of the final Manuscript to determine, in its sole discretion, whether it will proceed under this Agreement or terminate this Agreement pursuant to Paragraph 19 below.

**Publication**    **3.    (a)**    Subject to the terms and conditions contained herein, the Publisher shall publish the Work in such style and manner as the Publisher deems appropriate, within eighteen (18) months from the date of the Publisher's acceptance of the final Manuscript. Notwithstanding the foregoing, in the event either (i) the Work is significantly longer or shorter than specified in Paragraph 2(a) above; (ii) after the Manuscript is accepted for publication,

changes to the Manuscript are made by the Author with the Publisher's consent, revision of the Manuscript is required due to unforeseen events or developments, technical errors require correction, or the Author for any reason does not meet the Publisher's schedule for returning materials; (iii) delays result from acts or conditions beyond the control of the Publisher or its suppliers or contractors, including, but not limited to, war, fire, flood, labor disputes, governmental action, shortages of material, riots, civil commotions or other similar causes; or (iv) publication must be delayed to accommodate first serial or book club use, then the Publisher shall publish the Work as soon as the Publisher deems practical.

3.    (b)    The Publisher shall promote and sell the Work in such manner and at such prices as it deems appropriate, and make any and all other arrangements it deems appropriate with respect to the Work and the rights thereto granted to it herein.

3.    (c)    The Publisher will not be obligated to publish the Work if, in its reasonable judgment, circumstances beyond its control adversely affect the Work's marketability or potential sales. In such event, (i) the Publisher will notify and pay the Author the advance installment next due, (ii) all rights to the Work, exclusive of the Title and Brand of the Work specified in Paragraph 11 below, will revert to the Author, and (iii) this Agreement will terminate. If the Author places such reverted Work with another publisher, the Author will provide written notice and repay all advances to the Publisher to the extent the Author receives advances and royalties from such other publisher.

**Copyright Notice**    4.    The Publisher shall include in each copy of the Work published by it a notice of copyright in the Publisher's name in conformity with the United States Copyright Act and the Universal Copyright Convention and require its licensees to do the same.  The Publisher shall have the right to register the copyright in the Work with the United States Copyright Office.  Any textual or illustrative material prepared for the Work by the Publisher at its expense may be copyrighted separately in the Publisher's name.

**Royalties**    5.    (a)    The Publisher shall pay to the Author, as a royalty, the following percentages of the Publisher's "net dollar receipts" (as defined below) from sales or licenses of the Work:

|  |  | Percentages: |
|---|---|---|
| (1) | from sales of a hardcover edition in the United States, its possessions and territories, and Canada: | 10% |
| (2) | (i)  from sales of a trade paperback or other softcover edition (except for a mass-market paperback edition) in the United States, its possessions and territories, and Canada: | 10% |
|  | (ii)  intentionally omitted |  |
| (3) | from sales of a hardcover edition elsewhere: | 5% |
| (4) | from sales of a trade paperback or other softcover edition (including a mass-market paperback edition) elsewhere: | 5% |
| (5) | from sales or licenses of the Work or materials from the Work in electronic form, whether directly by the Publisher or indirectly through or with others: | 10% |
| (6) | from sales of any edition through direct-to-consumer marketing (including, for example, direct mail, but not including sales made via the Publisher's website): | 5% |
| (7) | from sales of the Work at discounts of 56% or more from list price or sold in bulk for premium or promotional use, or special sales outside the ordinary channels of trade: | 5% |
| (8) | from sales of the Work produced "on demand" when it is not feasible to maintain a normal inventory: | 5% |

| | | |
|---|---|---|
| (9) | from sales of non-dramatic audio recording and audio/video adaptations: | 7 ½% |
| (10) | from sales or licenses by the Publisher of the following subsidiary rights in the Work to third parties: reprint (35%); foreign language (35%); first serial (35%); second serial (35%); condensations (35%); motion picture (35%); non-dramatic audio recording and audio/video adaptation rights (35%); dramatic and ancillary rights (35%); commercial and merchandising rights (35%); public performance rights (35%); and in any media, permissions for quotations of short excerpts and photocopies (35%); in each case after deduction of the Publisher's out-of-pocket costs, if any, incurred in connection with such licenses. | |
| (11) | from sales or licenses by the Publisher to book clubs: | 10% |
| (12) | should Publisher undertake, either alone or with others, the activities described in (10) and (11): | 7 ½% |
| (13) | from sales or licenses of other adaptations and other derivative works not specified above: | 7 ½% |
| (14) | from use of all or a part of the Work in conjunction collectively with other work(s), a fraction of the applicable royalty rate equal to the proportion that the part of the Work so used bears to the entire collective work: | pro rata |

5.    **(b)**    As an advance against all royalties and all proceeds due to the Author pursuant to this Agreement or any other agreement for other editions of the Work between the Author and the Publisher, the Publisher will pay the Author a total of ten thousand dollars ($10,000.00 USD), payable as follows:

(1)    Two thousand five hundred US dollars ($2,500.00 USD) upon execution of this Agreement;

(2)    One thousand eight hundred seventy five US dollars ($1,875.00 USD) promptly after the Publisher's timely receipt of the first 25% of acceptable Manuscript and Materials;

(3)    One thousand eight hundred seventy five US dollars ($1,875.00 USD) promptly after the Publisher's timely receipt of the next 25% of the acceptable Manuscript and Materials;

(4)    One thousand eight hundred seventy five US dollars ($1,875.00 USD) promptly after the Publisher's timely receipt of the next 25% of the acceptable Manuscript and Materials;

(5)    One thousand eight hundred seventy five US dollars ($1,875.00 USD) promptly after the Publisher's timely receipt of the final 100% of the acceptable Manuscript and Materials, and completed Author review of the Manuscript, pursuant to Paragraph 2 (c) above.

5.    **(c)**    "Net Dollar Receipts" are defined as United States Dollars earned and received by the Publisher less any discounts, taxes, bad debts, customer returns, allowances and credits and excluding any sums charged separately to the customer for shipping.  Sales or licenses made to any subsidiary or affiliate companies will be accounted for as though made to unrelated parties.

5.    **(d)**    Intentionally omitted.

5.    **(e)**    Royalties shall not be due on any revenues earned abroad where any foreign government blocks the conversion or transmittal of such monies to the United States, until such revenues can be transmitted.

5.    **(f)**    No royalties shall be paid in connection with:

(1)    fees received for the use of illustrative material, if any, prepared by the Publisher or at the Publisher's request, plates, negatives, type, tape or other property of the Publisher;

(2)    any grant of rights by the Publisher at no charge for transcription into Braille, large type publication or otherwise for use by persons with disabilities;

(3)    Remainder copies and other copies sold below or at cost including expenses incurred, or furnished free to the Author, or for review, advertising, sample or similar purposes which may benefit the sale of the Work;

(4)    copies donated to charity.

**Accounting**    6.    Payments to the Author shall be made semiannually, on or before the last day of June and December of each year for royalties due for the preceding half-year ending the last day of April and October respectively and shall be accompanied by an appropriate Statement of Account. The Publisher may take credit for any returns for which royalties have been previously paid. If the balance due the Author for any royalty period is less than $100, no payment shall be due until the next royalty period at the end of which the cumulative balance has reached $100. The Publisher may retain a twenty percent (20%) reserve for future returns for three royalty periods, provided the accounting statements indicate the amount of the reserve and how it has been applied. Any offsets against royalties or sums owed by the Author to the Publisher under this Agreement or any other agreement for other editions of the Work between the Author and the Publisher may be deducted from any payments due the Author under this Agreement or any other agreement for other editions of the Work between the Author and the Publisher.

**Author's Copies**    7.    Upon publication the Publisher shall give twenty (20) free copies of the Work to the Author, who may purchase, for personal use only, additional copies of the Work at a discount of forty percent (40%) from the then current United States catalog list price and may purchase, for personal use only, the Publisher's other publications, except journals, at a discount of twenty five percent (25%) from the then current United States catalog list price.

**Competing Works**    8.    The Author, without the Publisher's prior written consent shall not publish or permit any third party to publish the Work or any portion thereof or any other version, revision or derivative work based thereon in any media now known or later developed. The Author may, however, draw on and refer to material contained in the Work in preparing articles for publication in scholarly and professional journals and papers for delivery at professional meetings, provided that credit is given to the Work and the Publisher.

The Work shall be the Author's next book-length work whether under the Author's name or in collaboration with any other author.

The Author shall not, without the Publisher's prior written consent, prepare or assist in the preparation of any other work on the same or substantially similar subject as the Work that might, in the Publisher's reasonable judgment, be directly competitive with the Work.

**Remainder Copies**    9.    When the Publisher determines that the demand for the Work is not sufficient to warrant its continued manufacture and sale, the Publisher may discontinue maintaining an inventory of the Work and may remainder all bound copies and sheet stock.

**Name/Likeness**    10.    The Publisher shall have the right to use the name, likeness and biographical data of the Author on any edition of the Work or on any derivative work thereof, and in advertising, publicity or promotion related thereto and may grant such rights in connection with the license of any subsidiary rights in the Work. The Author shall provide in a timely manner any information reasonably requested by the Publisher for use in promoting and advertising the Work.

**Title of the Work and Branding**    11.    The rights in the title of the Work, and any series titles, trademarks, service marks, "look and feel", and trade dress used on or in connection with the Work (hereinafter collectively referred to as the "Brand"), shall belong solely to the Publisher, and the Author hereby transfers and assigns to the Publisher in perpetuity any rights the Author might have therein. The Publisher shall have the exclusive right to license or otherwise exploit the Brand, in any media, by itself or in arrangements with third parties, separate and apart from the Work or in combination with the Work, and receive a license fee or other royalty attributable solely to the Brand. In either of such events the Author is not entitled to receive any compensation unless, in the Publisher's sole discretion, the Publisher licenses or otherwise exploits the Brand in combination with separate author created materials, in which case the

Author may receive such financial participation as set forth in a separate Addendum which shall be attached hereto and incorporated herein.

**Author's Property**    12.    The Author shall retain a copy of the Manuscript of the Work, including any illustrative material. The Publisher may, after publication of the Work, dispose of the original Manuscripts, illustrative material and proofs. The Publisher will, however, on written request made prior to publication, make reasonable efforts to return any original illustrative material supplied by the Author. The Publisher shall not be responsible for loss of or damage to any property of the Author.

**Revised Editions**    13.    If the Publisher determines that a revision of the Work is desirable, the Publisher shall, unless the Author is deceased, request the Author to prepare the revised edition and the Author shall advise the Publisher within twenty (20) days whether the Author will do so in accordance with the schedule set forth by the Publisher. If the Author advises the Publisher that the Author will prepare the revised edition, the Author shall diligently proceed with the revision, keep the Publisher advised of the Author's progress, and deliver the complete Manuscript to the Publisher on the scheduled due date.

If the Author does not participate in the revision, or if the Author does not diligently proceed with the revision, the Publisher shall have the right to arrange with others for the preparation of the revised edition. In such case, the Publisher shall have the right to deduct from the Author's royalties any fees or royalties paid to the reviser(s) provided that the Author's royalties shall not be reduced by more than fifty percent (50%) for the first such revised edition. No royalties shall be paid to the Author with respect to further revised editions not prepared by the Author. The revised editions may be published under the same title and may refer to the Author by name, but credit may be given to the reviser(s) in the revised edition(s) and in advertising and promotional material with respect thereto.

Except as otherwise provided herein, the provisions of this Agreement, including royalty terms (but excluding the advance provided herein), shall apply to each successive revised edition as though it were the first edition.

**Option**    14.    Intentionally omitted.

**Warranty**    15.    The Author represents and warrants that: the Work is original except for material for which written third party permissions have been obtained; it has not previously been published and is not in the public domain; the Author has the right to enter into this Agreement and owns and can convey the rights granted to the Publisher; the Work contains no libelous or unlawful material or instructions that may cause harm or injury; it does not infringe upon or violate any copyright, trademark, trade secret or other right or the privacy of others; and statements in the Work asserted as fact are true or based upon generally accepted professional research practices. The Author will hold the Publisher and its distributors and licensees harmless against all liability, including expenses and reasonable counsel fees, from any claim which if sustained would constitute a breach of the foregoing warranties. Each party will give prompt notice to the other if any claim is made and the Author will cooperate with the Publisher, who will direct the defense thereof. Pending any settlement, final resolution or clear abandonment of a claim, the Publisher may engage counsel of its choice and may withhold in a reasonable amount sums due the Author under this or any other agreement between the parties. The provisions of this paragraph will survive termination of this Agreement.

**Infringement**    16.    If the copyright in the Work or in any derivative work is infringed, the Publisher shall have the right, but not the obligation, to pursue a claim for infringement in such manner as it deems appropriate. If it does so, the Publisher shall recoup the expense incurred from any recovery, and the balance of the proceeds, if any, shall be divided equally between the Author and the Publisher. If the Publisher does not pursue such a claim after the Author's request to do so, the Author, at the Author's expense, shall have the right to prosecute an action, and any recovery shall belong solely to the Author.

**Termination by Author**    17.    (a)    The Author may terminate this Agreement by written notice to the Publisher if the Publisher does not reply to the Author's request for notification pursuant to Paragraph 2(d) above, or if the Publisher does not publish the Work as specified in Paragraph 3 above, for reasons other than as specified therein.

17.    (b)    The Author may terminate this Agreement prior to publication by written notice to the Publisher if a voluntary petition in bankruptcy under Title 11, United States Code is filed by the Publisher or an involuntary petition under Title 11, United States Code is filed against the Publisher and an order for relief is entered.

17.    (c)    Upon termination of this Agreement by the Author pursuant to subparagraph (a) or (b) above, the Publisher agrees to revert to the Author all rights herein granted by the Author (except for Title of the Work and

Branding as specified in Paragraph 11 above) and the Author shall retain as liquidated damages in lieu of any other damages or remedies, any payments received by the Author from the Publisher with respect to the Work.

**Available for Purchase**

18.  If the Publisher, in its sole discretion decides that sales of the Work are not sufficiently profitable to keep it "available for purchase" and the Publisher does not, within six (6) months after receipt of a written request from the Author to otherwise make it available for purchase or contract therefore for purchase within a reasonable time, all rights granted to the Publisher shall, at the end of the six-month period revert to the Author, subject however, to any option, license, or contract granted to third parties prior to the date of the reversion, and further subject to the Publisher's right to continue to publish and sell any then-existing derivative work based on the Work, all subject to the rights of the Author and the Publisher to their respective shares of the proceeds from such license or use under this Agreement.  The Work shall be deemed to be "available for purchase" for this purpose if any edition of the Work is on sale or is otherwise available in any medium or language, or is under option or contract for publication under the Publisher's or any other imprint, or if the Publisher or its licensee offers for sale copies of the Work to be produced, manufactured or electronically transmitted, upon receipt of orders therefor.

**Termination by the Publisher**

19.  (a)  The Publisher may terminate this Agreement prior to publication in the event:

(1)  the Author fails to deliver a complete, satisfactory Manuscript pursuant to Paragraph 2(a) above by the Due Date or fails or refuses to make the changes or edits requested by the Publisher in a timely manner  pursuant to Paragraphs 2(b) and (c) above; or

(2)  the Publisher does not exercise its exclusive right to publish the Work pursuant to Paragraph 2(e) or 3(c) above; or

(3)  publication may result in legal liability unacceptable to the Publisher in its reasonable judgment.

19.  (b)  Upon termination of this Agreement by the Publisher pursuant to Paragraph 19(a) above, and except as provided in Paragraph 3(c), the Author shall promptly repay to the Publisher any advances or other payments made to the Author hereunder.  Upon receipt of such repayment, the Publisher shall revert to the Author all rights herein granted by the Author and the Publisher shall have no further obligation or liability hereunder.

**General**

20.  (a)  The engagement of the Author is personal and the rights hereunder granted to the Author are not assignable nor may the obligations imposed be delegated without the prior written consent of the Publisher; provided however, that the Author may assign any sums due to the Author hereunder without the Publisher's consent.

20.  (b)  Except as provided in the preceding subparagraph, this Agreement shall inure to the benefit of the heirs, successors, administrators, and permitted assigns of the Author and the subsidiaries, successors, and assigns of the Publisher.

20.  (c)  All notices to be given by either party hereunder shall be in writing and shall be sent to the Author at the Author's address as it is set forth in this Agreement unless such address has been changed by proper written notice, or to the Publisher, addressed to the attention of the Senior Vice President & General Counsel.

20.  (d)  This Agreement shall not be subject to change or modification in whole or in part, unless in writing signed by both parties.

20.  (e)  No waiver of any term or condition of this Agreement or of any part thereof shall be deemed a waiver of any other term or condition of this Agreement or of any breach of this Agreement or any part thereof.

20.  (f)  This Agreement shall be construed and interpreted pursuant to the laws of the State of New York applicable to contracts wholly entered into and performed in the State of New York.  Any legal action, suit or proceeding arising out of or relating to this Agreement or the breach thereof shall be instituted in a court of competent jurisdiction in New York County in the State of New York and each party hereby consents and submits to the personal jurisdiction of such court, waives any objection to venue in such court and consents to service of process by registered or certified mail, return receipt requested, at the last known address of such party.

20.  (g)  The provisions of Paragraph 15 above and this Paragraph shall survive the termination of this Agreement.

**20.**   **(h)**   Any Addenda attached hereto are incorporated herein.

**Agency Clause**

**21.**   Author hereby confirms that Author has irrevocably appointed David Fugate, doing business as LaunchBooks Literary Agency ("LaunchBooks"), located at 566 Sweet Pea Place, Encinitas, California 92024, as Author's exclusive agent throughout the world with respect to the Work and all rights therein. Author irrevocably directs and authorizes Publisher to forward all statements and pay all monies otherwise accruing from Publisher to Author with respect to the Work solely to and in the name of LaunchBooks Literary Agency, and Publisher agrees to do so. Receipt by LaunchBooks shall be deemed receipt by Author. Author irrevocably empowers LaunchBooks to act on Author's behalf in all matters arising from or pertaining to this Agreement and the Work it covers. Author irrevocably agrees to pay LaunchBooks, and Author irrevocably authorizes LaunchBooks to receive and retain an amount equal to fifteen percent (15%) of all monies payable to Author under this Agreement and otherwise accruing from Publisher to Author with respect to the Work, and Publisher hereby agrees to honor said payment. LaunchBooks shall be considered a third person beneficiary of Publisher's said agreements to make payments to LaunchBooks and to honor said assignment. The designation of LaunchBooks as Author's exclusive agent shall survive the incapacity or death of the Author and may be terminated only upon written notice to the Publisher signed jointly by the Author or his heirs, executors, successors or assigns, and by LaunchBooks. The term "this Agreement" as used in this paragraph includes but is not limited to this Agreement and all modifications, amendments, renewals, extensions, and supplements to this Agreement, as well as all transactions between Author and Publisher pertaining to the Work, whenever and by whomever made. The term "Author" as used in this paragraph includes but is not limited to all author(s) named elsewhere in this Agreement and their successors, assigns, licensees, heirs, legal representatives, administrators and executors and anyone acting on their behalf or in their place and stead.

LaunchBooks Literary Agency Federal Tax Identification Number: REDACTED Fed. R. Civ. P. 5.2(a)(1)

**AGREED AND ACCEPTED:**

Daniel Gilbert

REDACTED
Fed. R. Civ. P. 5.2(a)(1)
Social Security Number or U.S. TIN

38 AUTUMN LANE
AMHERST, MA 01002
Address

loglow@gmail.com
E-Mail

7/27/06
Date

REDACTED
Fed. R. Civ. P. 5.2(a)(2)
Date of Birth

USA
Citizenship

**WILEY PUBLISHING, INC.**

By: _____
Joseph B. Wikert
Vice President and Executive Publisher

Date: 7/31/06

*Page 8 of 11*
*Hacking Warcraft/Gilbert*
*0470110023/Contract #18536*

## ADDENDUM TO PUBLISHING AGREEMENT
## FOR BRAND LICENSING PROJECTS

**DATED**: July 20, 2006

This is an Addendum to the Publishing Agreement dated July 20, 2006 ("Agreement"), between Wiley Publishing, Inc. ("Publisher") and Daniel Gilbert ("Author") for the Work entitled Hacking World of Warcraft and is attached to and incorporated in the Agreement.

1.      **Preamble**.

(a) Pursuant to Paragraph 11 of the Agreement, Publisher has developed and has the exclusive worldwide rights to further develop, use and receive monies for the titles of its works, Publisher's logos, icons, cartoons and characters, and the style, design, look and feel, trade names, trademarks, trade dress, get-up, and line extensions of Publisher's publications and series of works and related products. These items are hereinafter collectively referred to and defined as the "Brand."

(b) Under the Agreement and otherwise, Publisher is entitled to enter into arrangements with third parties (collectively "Licensee(s)") to license or otherwise use the Brand, either separately or with all or part of the Work, in any and all formats and media whether now known or hereafter devised, (a "Brand Licensing Project"). If Publisher licenses use of the Brand separate and apart from the Work, and will receive a license fee or other royalty solely attributable to the Brand, Author is not entitled to and will not receive compensation, even if such a Brand Licensing Project uses a Work's title or covers its subject matter, but does not use Materials from the Work that have been specifically created by Author ("Author Created Materials").

(c) Publisher will determine in its sole discretion whether or not to use Author Created Materials in a Brand Licensing Project. If Publisher licenses or otherwise exploits the Brand in combination with Author Created Materials (a "Qualifying Project") Author will receive a financial participation, as defined in Paragraph 2 below.

2.      **Author's Participation and Net Licensing Receipts**.

(a) Publisher will pay Author a financial participation equal to fifty percent (50%) of the Net Licensing Receipts (as defined in Paragraph 2(c) below) for each Qualifying Project (the "Participation"). Author will receive fifty percent (50%) of the Participation for a sequel or prequel to a Qualifying Project, and thirty-three and one-third percent (33.33%) of the Participation for a remake of a Qualifying Project.

(b) If Author is a joint author of the Work, Author's Participation will be pro-rated in the same manner that Author's royalties on Net Revenues and Net Cash Receipts are pro-rated under the Agreement.

(c) "Net Licensing Receipts" means twenty-five percent (25%) of the balance, if any, of Publisher's Licensing Receipts (as defined in Paragraph 2(c) below) from a Qualifying Project, after first deducting Publisher's Licensing Costs (as defined in Paragraph 2(e) below). The remaining seventy-five percent (75%) share of Net Licensing Receipts is deemed the fee attributable to Licensee's use of Publisher's Brand.

(d) "Licensing Receipts" means, as to a Qualifying Project, all monies, when and as received by Publisher as development, production, consulting, option, or rights fees, and advances, royalties, bonuses, participations, and similar payments, under agreements between Publisher and Licensee for Publisher's (i) production services, (ii) license of the right to base a Brand Licensing Project on the Brand and/or Author Created Materials, or (iii) distribution rights in the Brand Licensing Project. Publisher will compute Licensing Receipts after all refunds, credits, discounts, and adjustments have been made between Publisher and Licensee, for which Publisher may establish a reserve (not to exceed 25%). Publisher will not include in Licensing Receipts advances and security

deposits it receives until earned or forfeited, respectively. Licensing Receipts will be net of distribution fees, distribution costs, production costs, and other charges under Publisher's agreement with Licensee, the terms of which will bind Author.

(e) "Licensing Costs" means, as to a Qualifying Project, one hundred and ten percent (110%) of all direct out-of-pocket costs and expenses Publisher incurs or is charged with by the Licensee, to the extent not already covered by the Licensee, in connection with (i) the development, preparation, or repurposing of the Brand or the Work (including the Author Created Materials) for production, (ii) the promotion, distribution, and use of the Brand Licensing Project, and (iii) obtaining payment of Licensing Receipts. Such costs may include without limitation duping, dubbing, reformatting, retitling, editing, shipping, insurance, taxes, royalties, residuals, agency and management fees, and commissions, legal, auditing, and collection costs, copyright search and registration fees, and currency conversions. Licensing Costs will be deducted as accrued, for which the Publisher may establish a reserve (not to exceed 25%).

(f) The provisions of this Paragraph for the computation of Net Licensing Receipts for Qualifying Projects that involve "sound recordings," "video recordings," or "audiovisual recordings" do hereby replace and supersede the provisions of Paragraphs 5(a)(9) and 5(a)(10) of the Agreement for the computation of Net Cash Receipts based on the use of the Work in "audio and video adaptations". Notwithstanding the preceding sentence, Publisher's use of the Work in connection with the licensing of others to publish sound recordings derived solely from the text of one or more Works, read by the Author(s) or by third party(s), in the form of an audio or "spoken word" book will continue to be classified as provided under Paragraphs 5(a)(9) and 5(a)(10) of the Agreement, and Author will be compensated based on Publisher's Net Cash Receipts from such licensing arrangements.

3.    **Allocations, Packages, and Reserves**.

(a) If Author Created Materials are combined with the works or materials of other authors or creators to produce a Qualifying Project and are a separately identifiable unit in that Qualifying Project (for example, a television episode or segment of an educational video), Author will receive the full applicable Participation for that identifiable unit. In that event, Licensing Receipts will be pro-rated based on the proportion that such unit bears to all of the units in the Qualifying Project, which Publisher may recompute prospectively from time to time based on the production of new units. If Author Created Materials are combined with the works or materials of other authors or creators but are not used as a separately identifiable unit (e.g., one project using Author Created Materials, materials from other Publisher works, and new, original content), then Author will receive a pro-rated Participation determined by Publisher in good faith, based on the proportion of the Brand Licensing Project that utilizes Author Created Materials, as compared to the total amount of Author Created Materials and works or materials of other authors or creators contained within the project. Such determination will be conclusive and binding on Author.

(b) If Publisher incurs any costs and/or receives any receipts in respect of a Qualifying Project described in Paragraph 3(a) above together with receipts and costs from other projects, then a portion of such costs and/or receipts will be allocated by Publisher in good faith to the Qualifying Project. If Publisher anticipates retroactive wage adjustments, residuals, uninsured claims, or other expenses or losses relating to the Qualifying Project, which, when incurred will be properly deductible hereunder, Publisher may establish an appropriate reserve (not to exceed 25%).

4.    **Statements and Payments**.

Publisher will include the computation of Net Licensing Receipts on the same royalty statements it sends to Author under Paragraph 6 of the Agreement, after Publisher receives and earns Licensing Receipts from Publisher's Licensee, and will make payments to Author on the same cycle that Publisher pays other royalties to Author. Author will have the same examination rights as to Publisher's computation of Net Licensing Receipts and the Participation as are provided under the Agreement.

5.    **Other Matters**.

Author will have no ownership, propriety right or interest in or to any Brand Licensing Project or any distribution or other rights derived therefrom; all Licensing Receipts will be received by Publisher as its sole property and Publisher's only obligation under this Addendum will be to pay Author's Participation, if any.

**AGREED AND ACCEPTED:**

By: _____          **WILEY PUBLISHING, INC.**
    Daniel Gilbert                    By: _____
                                          Joseph B. Wikert
                                          Vice President and Executive Publisher

Title: _____

Date: 7/27/06                         Date: 7/31/0