UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL BENJAMIN GILBERT,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant and Counterclaim-Plaintiff. | Civil Action No. 3:26-cv-30081-MGM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THE AMENDED COUNTERCLAIM IN PART OR, IN THE ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS**

## INTRODUCTION

Plaintiff brought a piracy case. The First Amended Complaint alleges that Anthropic downloaded an unauthorized copy of his book, *Hacking World of Warcraft* (the "Work"), from a pirated library and has kept it ever since, and it seeks relief for those acts of reproduction. It does not ask this Court to decide whether the use Anthropic calls training is fair. (FAC ¶ 12.)

The Amended Counterclaim (ECF No. 36) devotes most of its length to things Plaintiff does not contest: he does not contend that any model output reproduces the Work (Counterclaim ¶¶ 132, 139 to 140 (so alleging)); his pleading does not put the transformative character of model training at issue (Counterclaim ¶¶ 130, 138); he asserts no claim about the purchased and scanned copy (Counterclaim ¶¶ 106, 137); and he does not challenge the filtering guardrail as such (Counterclaim ¶¶ 145 to 147). What remains is the claim the First Amended Complaint pleaded from the start: that in 2021 and 2022 Anthropic downloaded copies of the Work from

pirate repositories rather than buying the book, and retained them. That claim and Anthropic's fair use defense to it are before the Court, and nothing in this motion touches either.

On August 22, 2026, Plaintiff executed and served on Anthropic an unconditional and irrevocable Covenant Not to Sue (the "Covenant," Exhibit A to Plaintiff's Answer to Amended Counterclaim, ECF No. 41-1). The Covenant covers the use of the Work in the training, development, improvement, testing, offering, or operation of Anthropic's large-language models (such uses, together, "Training Uses"), past, present, and future, and every dealing with Anthropic's lawfully purchased copies of the Work ("Purchased Copies"); it reserves only claims arising from pirate-sourced copies, including the claims the First Amended Complaint pleads. It is effective now, requires nothing of Anthropic, and cannot be revoked.

The distinction that decides this motion is between copies and uses. The First Amended Complaint claims every unauthorized reproduction of the Work made from a pirate-sourced copy, whenever made; nothing in this motion narrows those claims. What the Complaint does not present, and what the Covenant now puts beyond any suit Plaintiff could bring, is the fairness of training as such and the lawfulness of the purchased copy. Fair use is a use-specific defense; a court evaluates it use by use. See *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023). The fairness of Training Uses is therefore a different legal question from the claims pleaded, and no controversy between these parties presents it.

The Declaratory Judgment Act requires an actual controversy between these parties, and Anthropic bears the burden of establishing one. As to Training Uses and Purchased Copies, the Covenant has extinguished any controversy, and none existed to begin with. In the alternative, this is a proper occasion for the Court's discretion to decline. Plaintiff therefore moves to dismiss the Counterclaim only to the extent it seeks a declaratory judgment, beyond the claims pleaded,

concerning the fairness or lawfulness of Training Uses or concerning Purchased Copies, without prejudice; in the further alternative, he asks the Court to confirm that the Counterclaim will be adjudicated as coextensive with the claims pleaded. Plaintiff does not move against the remainder of the Counterclaim, which mirrors the Complaint and will rise or fall with it.

## BACKGROUND

The Complaint pleads acts of reproduction, not training: Anthropic downloaded the Work from LibGen, a pirated library, and retained copies in its general-purpose library (FAC ¶¶ 45 to 62), and the claim "is for Defendant's unauthorized downloading and reproduction of the Work, not for model training." (FAC ¶ 12.) Anthropic's Amended Answer admits that it "downloaded certain books in 2021 and 2022 from LibGen and PiLiMi" (Amended Answer ¶ 47), and its Counterclaim pleads that "[a]t least some portion of the Work was included in the LibGen and PiLiMi versions Anthropic downloaded." (Counterclaim ¶ 101.)

The Amended Counterclaim reaches beyond the Complaint. It seeks a declaration that Anthropic "does not infringe and has not infringed any right in the Work," including because "any reproduction or use of the Work was fair use" (Prayer B), as to three categories of conduct: the 2021 and 2022 downloads and their use in research training (Counterclaim ¶¶ 129 to 136); the separately purchased and scanned copy and its use in training commercial models (Counterclaim ¶¶ 137 to 144); and the operation of a filtering guardrail (Counterclaim ¶¶ 145 to 147). Only the first involves conduct the First Amended Complaint challenges. The second concerns a copy Plaintiff never sued over; the third concerns a system whose operation he does not challenge, except that its reference data contain the pirated copies already accused (FAC ¶ 62; Counterclaim ¶¶ 108 to 109, 146).

The Amended Counterclaim's stated justification has changed. The original Counterclaim rested on three case-specific hooks: the reach of Plaintiff's remedies prayers, his allegations of ongoing conduct, and Anthropic's claimed exposure to suits by other rightsholders. (ECF No. 28 ¶¶ 93 to 95.) The Amended Counterclaim pleads none of these. In their place it offers a construal: that Plaintiff's pleading "could be construed as" an attempt to "sever" acquisition from use and thereby to preclude Anthropic's fair use defense (Counterclaim ¶¶ 120 to 121, 125), and that without a declaration Anthropic risks litigating this action to judgment without a ruling on why it acquired the Work and what it did with it (Counterclaim ¶ 88). Plaintiff asks for no such preclusion, and never has: his Answer expressly concedes Anthropic's right to plead, take discovery on, and prove its fair use defense to the claims pleaded in the First Amended Complaint. (Answer ¶ 121; see Part II.B.)

Plaintiff conferred twice before filing. On August 1, 2026, he identified the portion of the original Counterclaim at issue and offered two alternatives that would have resolved the issues without motion practice; Anthropic amended its pleading instead. On August 22, 2026, he conferred again, served the executed Covenant, and renewed both alternatives. (The August 1 correspondence is quoted at Counterclaim ¶¶ 122 to 123.)

## LEGAL STANDARD

A Rule 12(b)(1) motion tests subject-matter jurisdiction, which may be raised at any time. Fed. R. Civ. P. 12(h)(3). On a facial challenge the Court accepts the pleading's well-pleaded facts and asks whether they establish jurisdiction, *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001), and the Court may consider materials beyond the pleadings without converting the motion; the Covenant is in any event part of the pleadings, as an exhibit to Plaintiff's Answer to Amended Counterclaim. Fed. R. Civ. P. 10(c).

The Declaratory Judgment Act permits a declaration only "[i]n a case of actual controversy." 28 U.S.C. § 2201(a). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 to 241 (1937), and *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The standard is flexible but not boundless, and the party invoking declaratory jurisdiction bears the burden of establishing it. See *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83, 95 (1993) ("a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy"); *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 534 to 535 (1st Cir. 1995) (the Act "offers a window of opportunity, not a guarantee of access"). The controversy must exist at every stage: jurisdiction over a declaratory claim must have "existed at the time the claim for declaratory relief was filed" and have "continued since." *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012) (quoting *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007)). A binding covenant not to sue given during the litigation moots a declaratory counterclaim it covers. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 to 95 (2013).

Even where jurisdiction exists, the Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In the alternative, because the pleadings closed upon the filing of Plaintiff's Answer to Amended Counterclaim, the same relief is available under Rule 12(c). *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).

## ARGUMENT

### I. The Covenant moots the Counterclaim as to Training Uses and Purchased Copies.

The Covenant is categorical. Plaintiff, for himself and for anyone who may later hold his claims or interests in the Work, "unconditionally and irrevocably covenants not to assert, initiate, maintain, or participate in any claim, demand, action, or proceeding of any kind" against Anthropic or its affiliates, customers, and users, for infringement of any copyright in the Work, arising from "any Training Uses of the Work, whether past, present, or future," or from "the acquisition, digitization, reproduction, retention, distribution, or use of any Purchased Copy, whether past, present, or future." (Covenant ¶ 2.1.) It "is effective upon execution, requires no acceptance or consideration, is not conditioned on any act of any Anthropic Party or any outcome in the Action, and cannot be revoked, rescinded, or modified." (Covenant ¶ 2.2.) Like the covenant in *Already*, it is unilateral; its force does not depend on contract formation, because the covenant and this motion together estop any later suit on the covered conduct.

*Already* controls. There, mid-litigation, a trademark holder delivered an "unconditional and irrevocable" covenant not to sue, and the Supreme Court held it mooted the alleged infringer's declaratory counterclaim: no reasonable prospect of suit over the covered conduct remained, so no case or controversy did either. 568 U.S. at 93 to 95. The burden of establishing mootness under the voluntary-cessation doctrine rests on the covenanting party, who "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *Already*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000) (*Laidlaw*)), and Plaintiff accepts it here; the Covenant's face meets it for Purchased Copies, Part II completes it for Training Uses, and no fact is left to find. The Covenant's coverage is complete on the two

subjects this motion concerns. It reaches every infringement claim founded on Training Uses as such, and every dealing with every Purchased Copy, past, present, or future; it binds Plaintiff and every later holder of his rights; and it cannot be undone. And the declaration Anthropic pleads reaches only rights "held by Mr. Gilbert" (Prayer B), exactly the rights the Covenant covers. On those subjects there is nothing left to sue over and nothing left to declare.

The Covenant is equally clear about what it does not cover. It expressly reserves the claims this lawsuit is about: those arising from the acquisition, downloading, reproduction, storage, or retention of pirate-sourced copies of the Work, including any new reproduction made from such a copy, whatever its purpose. (Covenant ¶¶ 1.4, 1.5, 3.1.) Two constructions fix that reservation's boundaries, and both bind their drafter. First, reproductions made from pirate-sourced copies in the course of training are within the claims pleaded: the First Amended Complaint disclaims a theory of liability, a claim "for model training" (FAC ¶ 12), not acts of copying, and it claims every unauthorized reproduction of the Work made from a pirate-sourced copy, whenever made, "without regard to any use Anthropic later made or claims to have made" of the copies. (Answer ¶ 132; see FAC ¶¶ 61, 62, 74, 79.) That is the drafter's construction of his own pleading, and Plaintiff states it as a binding admission on which the Court and Anthropic may rely, in this case and any other. Those claims will be adjudicated in this action, Anthropic's conceded defense included, and the judgment will bind Plaintiff; no existing claim is being held back for a later suit. And even on a narrower reading of the Complaint, the result is the same: Plaintiff's construction is a binding admission that every such reproduction is claimed here, and the judgment in this action will preclude any later suit upon the reproductions claimed and adjudicated here. Second, "Pirate-Sourced Copies" does not mean models, model weights, or any other artifact that does not itself embody the Work or substantial verbatim portions of it; Plaintiff

construes his Covenant as he construes his prayer for relief (Answer ¶ 148), and does not contend otherwise.

Anthropic may answer that the reservation preserves a controversy concerning training, because training entails reproductions from the copies it retains. The reservation moves the training dispute into this case; it does not create a second one. Every claim concerning Training Uses runs down one of two paths: it arises from a pirate-sourced copy, in which case it is reserved and, under the construction that binds Plaintiff (Answer ¶ 132), within the claims pleaded and litigated here, defense and purpose evidence and all; or it does not, in which case the Covenant covers it and it is moot. In neither branch does a residual, freestanding controversy exist. Reserved claims never asserted support no declaratory jurisdiction either. See *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345, 1355 (Fed. Cir. 2024). That division is the design: the Covenant alone disposes of Purchased Copies, and for Training Uses it works together with Part II, which shows that no separate controversy ever existed to survive. The same two paths answer any amendment: a re-pleaded hook would describe either reserved claims, inside the case, or covered conduct, moot. And a desire for preclusive comfort against the reserved claims is not a separate controversy; it is a preview of the defense to be litigated within them. See *Streck*, 665 F.3d at 1283 to 1284. What the Covenant extinguishes is everything beyond the pleaded case: Training Uses as such, and everything concerning Purchased Copies. The reservation is not a gap in the mootness showing; it is the boundary between the case Plaintiff is litigating and the declarations no one needs.

Timing changes nothing. The covenant in *Already* was itself given mid-suit, and once the claim-holder disclaims the disputed scope, nothing remains on which "a continuing case or controversy" could rest. *Streck*, 665 F.3d at 1283. A dismissal on mootness grounds is without

prejudice, which is exactly the disposition this motion requests. The Rule 12(c) branch requires nothing more: on the pleadings alone, with the Covenant before the Court as Exhibit A to the Answer, the Counterclaim pleads no plausible actual controversy as to the subjects the Covenant covers. Drawing every reasonable inference for Anthropic changes nothing; the Covenant's terms, not inferences, decide what remains suable.

One comparison remains. A declaratory judgment on Training Uses would bind these two parties, at the end of this case, after any appeal. The Covenant binds Plaintiff now, unconditionally, unappealably, and in favor of a wider circle than any judgment here could reach. On the subjects it covers, the Covenant gives Anthropic more protection from suit than the declaration it pleads for.

## II. Independently, no actual controversy concerning Training Uses or Purchased Copies ever existed between these parties.

### A. Plaintiff claims copies; he has never asserted the questions the declaration would answer.

The Complaint accuses acts of reproduction: the 2021 and 2022 downloads from pirated sources, and the retention and further copying of the Work since. Fair use is decided use by use; the same copying "may be fair when used for one purpose but not another." *Warhol*, 598 U.S. at 533. The fairness of the use Anthropic calls training is therefore a different legal question from the claims pleaded, and one the Complaint expressly declines to present. (FAC ¶ 12.) As for Purchased Copies, the Complaint does not mention them; Plaintiff's Answer confirms that "the First Amended Complaint asserts no claim concerning Purchased Copies." (Answer ¶ 140.)

A declaratory defendant cannot be forced to litigate a question he has not raised, does not threaten to raise, and has renounced in his operative pleading. Nor could Plaintiff take an

informed position on that question if he wanted to: Anthropic's training processes and model outputs are known to Anthropic alone, and his Answer pleads lack of knowledge or information as to them. (Answer ¶¶ 97 to 100, 102 to 103, 130 to 131.) What the First Amended Complaint alleges about Anthropic's purpose, it alleges from the public record of the *Bartz* litigation, principally in a jurisdictional allegation. (FAC ¶¶ 8, 45 to 49; Answer ¶¶ 119 to 120.) Pleading why a defendant built its library is not knowledge of how its training works, and Plaintiff asserts no claim about the latter.

A dispute of "sufficient immediacy and reality" does not exist between parties, one of whom can know nothing of the subject's internals and claims nothing about it. As to Training Uses, the "controversy" exists only in the Counterclaim's own text.

### B. The Counterclaim's construal theory manufactures a controversy the pleadings refute.

The Amended Counterclaim's justification is a construal. It alleges that Plaintiff's pleading "could be construed as preventing Anthropic from asserting a fair use defense or introducing the fair use issue at all," and that Anthropic counterclaimed "to ensure fair use is properly at issue and considered in this case." (Counterclaim ¶ 121.)

The pleadings refute the premise. Plaintiff's Answer states: "Plaintiff does not contest Anthropic's right to plead, take discovery on, and prove its affirmative defense of fair use to the claims pleaded in the First Amended Complaint, including the purpose and character of the accused copying." (Answer ¶ 121.) That is a pleaded position, and it binds. See *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992). Any order granting this motion may say the same. Fair use is "properly at issue and considered in this case" in the only way a defense is ever at issue: as a defense to the claims pleaded.

What the construal theory actually describes is a disagreement about how that defense will fare. Anthropic pleads that acquisition and use are inseparable and that the fairness of its acquisition must be judged by its training purpose (Counterclaim ¶¶ 85 to 87); Plaintiff's operative pleading claims the acquisition and reproduction as infringement. Whether Anthropic's purpose makes its accused copying fair is exactly what the fair use defense to the pleaded claims will decide; a dispute about the legal consequence of facts within the pleaded claims is litigated within those claims, not through a separate declaratory judgment. A defendant's disagreement with the plaintiff about the merits of a defense does not support a declaratory claim broader than the case that contains it.

The Counterclaim's own formulation concedes as much. Its warning is conditional: an "error of law" would result "if Mr. Gilbert's pleading theory precluded consideration of Anthropic's purpose and use of the Work." (Counterclaim ¶ 124.) The condition is not met: nothing precludes that consideration, and the Answer pleads the opposite. (Answer ¶ 121.) What weight the statute gives Anthropic's ultimate use in the fairness of its acquisition is the merits of the defense, which Anthropic remains free to argue and Plaintiff will answer.

The correspondence the Counterclaim quotes says the same thing: "Because fair use is evaluated use by use, the Training Uses declaration is a severable question, and partial dismissal is proper (Warhol v. Goldsmith)." (Counterclaim ¶ 123.) The severable question is the declaratory question, not the defense; nothing in the correspondence forecloses any defense, and this motion does not either.

The Counterclaim's remaining fear is that Anthropic will have "litigated this action to judgment without ever obtaining a ruling on the very facts—why it acquired the Work and what it did with the Work—that determine whether both acquisition and use of the Work was lawful."

(Counterclaim ¶ 88.) Courts adjudicate claims and defenses, not freestanding entitlements to rulings. If Anthropic's purpose and use decide its fair use defense, it will have its ruling in defending the claims. (Answer ¶ 121.) A ruling broader than the pleaded claims require is an advisory opinion, and the Act does not authorize it. See *Aetna*, 300 U.S. at 240 to 241.

Plaintiff's own Answer confirms the boundary rather than blurring it. Its jurisdictional admission is expressly limited to "a counterclaim for declaratory judgment coextensive with the claims pleaded in the First Amended Complaint" (Answer ¶ 92), the portion of the Counterclaim this motion does not move against. And its admission that the declaration Anthropic seeks "turns on the same core conduct and operative facts" as Plaintiff's claim and "requires no separate proceeding" (Answer ¶ 125) is the premise of the alternative confirmed in Part V, not a concession that a freestanding fairness declaration presents a separate controversy: that the facts are the same is the reason no separate declaration is needed, not a reason one is justiciable.

**C. The original Counterclaim's case-specific hooks are gone, and Plaintiff's pleaded constructions foreclose their revival.**

The original Counterclaim's case-specific hooks (ECF No. 28 ¶¶ 93 to 95) are gone from the amended pleading. Plaintiff's Answer still carries the construction that answered the remedies theory, so no doubt remains. It states that Plaintiff does not contend that Prayers C and D of the First Amended Complaint authorize destruction or alteration of Anthropic's models, and clarifies Prayer D's phrase "infringing copies and related materials" to mean:

> [T]he following, in any format or encoding: copies of the Work; files containing substantial portions of the Work's text verbatim; and files or archives that contain such copies or portions together with other content, only to the extent of those copies or portions. It does not mean models or model weights, or any other artifact that does not itself embody the Work or substantial verbatim portions of it, and Plaintiff does not contend otherwise.

(Answer ¶ 148.) And because the Amended Counterclaim newly seeks a guardrail declaration (Counterclaim ¶¶ 145 to 147), the Answer extends the construction to meet it:

> Prayer D does not seek the destruction or disablement of any guardrail, filtering, or comparison system as such; as to any such system, it reaches only the copies and portions described above within the system's reference data, and may be satisfied by their removal or destruction.

(Answer ¶ 148.) Both constructions come from the party who drafted the prayer, and they bind him. *Schott*, 976 F.2d at 61.

To be clear, nothing in this motion narrows the Complaint: Plaintiff continues to assert claims for every unauthorized reproduction of the Work made from a pirate-sourced copy, whenever made, including reproductions after May 26, 2023. (FAC ¶¶ 61, 62, 74, 79.) Whether any future reproduction from a pirate-sourced copy would infringe will depend on the facts at that time; that exposure is the ordinary consequence of the pleaded claims and the Covenant's reservation, not a controversy about Training Uses, and the declaration Anthropic seeks would not adjudicate any future copy's lawfulness in any event.

## III. <u>Partial relief is proper: the challenged portion presents severable questions.</u>

Declaratory relief is question-specific. Section 2201 authorizes a court to "declare the rights and other legal relations of any interested party seeking such declaration," and justiciability is measured against each judicial act requested, not against the label on the count. See *Laidlaw*, 528 U.S. at 185 ("a plaintiff must demonstrate standing separately for each form of relief sought"). Supplemental jurisdiction is no answer: 28 U.S.C. § 1367 supplies statutory power over a counterclaim, not the actual controversy each requested declaration must independently present. Courts applying these principles routinely trim declaratory claims to the boundary of the actual controversy. *Warhol* is consistent: only one of the photograph's several uses was alleged to infringe, so the Court "limit[ed] [its] analysis accordingly" and expressed

"no opinion" on the unchallenged uses, although the declaratory plaintiff had sought a judgment covering them. 598 U.S. at 533 to 534 & n.9.

The practice is familiar in patent cases: where an accused infringer counterclaims for a declaration spanning an entire patent, courts dismiss the counterclaim as to claims the patentee never asserted, for lack of any controversy about them, while retaining it as to the claims in suit. See *Streck*, 665 F.3d at 1281 to 1284 (dismissing a declaratory counterclaim of invalidity as to claims the patentee never asserted); *Miller Mendel*, 107 F.4th at 1355 (case or controversy evaluated claim by claim; no jurisdiction over the unasserted claims).

The practice is equally familiar in insurance declaratory actions, where courts decide the ripe duty-to-defend question and dismiss the premature duty-to-indemnify question without prejudice. In *AIG Property Casualty Co. v. Green*, 217 F. Supp. 3d 415 (D. Mass. 2016), this Court decided the duty to defend on the pleadings; the contingent indemnity question was later dismissed without prejudice by consent. See *AIG Property Casualty Co. v. Cosby*, 892 F.3d 25, 27 n.1 (1st Cir. 2018) (recounting the disposition).

The posture here is the same: the Counterclaim seeks a declaration broader than the controversy the Complaint presents, and the portion beyond that boundary may be dismissed while the mirror portion remains. Because fair use is evaluated use by use, *Warhol*, 598 U.S. at 533, the fairness of Training Uses is distinct from the mirror non-infringement question, and the lawfulness of the purchased copy, conduct the Complaint never mentioned, is more distinct still. Dismissing those questions does not carve up a unitary claim; it declines separate questions improperly joined to one properly presented. The Counterclaim's own architecture concedes the point: it pleads its declaration in three self-contained sections, one per category of conduct. (Counterclaim ¶¶ 129 to 136, 137 to 144, 145 to 147.)

Nor would it aid Anthropic to insist that its Counterclaim is indivisible. If the challenged portions could not be addressed separately, the Counterclaim would be evaluated as a whole: a claim whose only justiciable content duplicates the Complaint, and whose only non-duplicative content presents no controversy. A court asked to keep such a claim intact would have every reason to decline it intact under *Wilton*. Plaintiff prefers, and this motion seeks, the narrower disposition. But indivisibility, if Anthropic asserts it, argues for more dismissal, not less.

## IV. <u>In the alternative, the Court should decline the challenged portion.</u>

Declaratory jurisdiction is discretionary even where it exists. *Wilton*, 515 U.S. at 286 to 288. Four independent considerations counsel declination.

First, the declaration would serve no useful purpose. Take the Counterclaim's account of training at face value: assume that the research training was transformative, assume no output reproduces the Work, assume the guardrail is legitimate. On those assumptions, which no pleaded claim puts at issue, a declaration saying so would resolve nothing in dispute between these parties, protect against no suit the Covenant has not already foreclosed, and decide no element of any pleaded claim. The fair use defense proceeds identically with or without it. (Answer ¶ 121.) Courts "should withhold declaratory relief as a matter of discretion if such redress is unlikely to palliate, or [is] not needed to palliate, the fancied injury." *González-Oyarzun v. Caribbean City Builders, Inc.*, 798 F.3d 26, 28 (1st Cir. 2015) (brackets in original) (quoting *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 494 (1st Cir. 1992)). *Cardinal Chemical* is not to the contrary: the independent value it recognized was patent invalidity, which outlives a non-infringement ruling; a mirror non-infringement declaration has no such separate content, and the mirror is retained in any event.

Second, the declaration would transform the action. The pleaded case is narrow: where one book came from, whether it was kept, and whether keeping it was fair. A freestanding declaration would put the workings of Anthropic's model training at issue, with expert discovery and confidentiality apparatus to match, in a case brought by one author over one book. And the transformation is measured against the declaration's increment, not against the defense: the discovery Anthropic's conceded defense requires (Answer ¶ 121; Covenant ¶ 3.2), within Rule 26(b)(1)'s limits, proceeds identically with or without the declaration, and what the declaration alone adds, proof about model outputs and expert work on markets for uses no claim accuses, is discovery that serves only relief nobody needs. On the Counterclaim's own description, admitted at Answer ¶ 125, resolving it "requires no separate proceeding"; the transformation follows only if the declaration exceeds that description.

Third, the Counterclaim's own text shows what the declaration is for: a second opinion. It recounts the summary judgment ruling in *Bartz v. Anthropic PBC*, the class action over the same LibGen and PiLiMi downloads, and pleads that the *Bartz* court's central factual finding "was erroneous and not supported in the record." (Counterclaim ¶¶ 110 to 114; ¶ 113.) The finding it calls erroneous concerns Anthropic's purpose, which will be litigated in the retained claims; the declaration would add only a second forum for the same grievance, and a declaratory counterclaim against a different author in another district is not the vehicle for it. See *Bartz*, No. 3:24-cv-05417-WHA, 2025 WL 2308091 (N.D. Cal. Aug. 11, 2025) (denying a stay pending interlocutory review). Using a declaratory judgment to relitigate an unfavorable ruling from another forum is a recognized reason to decline one. See *Mueller Systems, LLC v. Teti*, 199 F. Supp. 3d 270, 282 to 283 (D. Mass. 2016) (declining declaratory relief where, among other factors, the claim was "being used for procedural fencing").

Fourth, no efficiency is gained. Training-related claims against Anthropic are being litigated by plaintiffs who actually assert them. See, e.g., *Cambronne Inc. v. Anthropic PBC*, No. 5:25-cv-10897-PCP (N.D. Cal.). A declaration here would decide the question against a party who does not press it, on a record built for a different dispute, binding no one who raises it.

The disposition fits a familiar template: dismissal of the declaratory question without prejudice. See *Cosby*, 892 F.3d at 27 n.1. What governs the parties going forward is not the dismissal but the Covenant, and the Covenant is irrevocable.

## V. <u>In the further alternative, the Court should confirm the Counterclaim is coextensive with the Complaint.</u>

If the Court is not inclined to dismiss in part at this stage, Plaintiff respectfully requests, in the alternative, an order confirming that the Counterclaim will be adjudicated as coextensive with the claims pleaded in Plaintiff's operative complaint, on the same record, presenting no separate question concerning Training Uses or Purchased Copies, with the scope of discovery to be conformed to that confirmation at the Rule 16 conference or by later amendment of the scheduling order. That confirmation would secure this motion's case-management benefit at no cost to any legitimate interest of Anthropic, whose mirror declaration would remain intact. The Court's authority is familiar: the discretion the Declaratory Judgment Act confers may be exercised short of dismissal, see 28 U.S.C. § 2201(a); *Wilton*, 515 U.S. at 286 to 288, and Rule 16(c)(2) authorizes the Court to consider "formulating and simplifying the issues" at any pretrial conference. Fed. R. Civ. P. 16(c)(2)(A). Nothing in that confirmation would limit the discovery, evidence, or argument Anthropic may offer in support of its defenses to the claims pleaded in the First Amended Complaint. The alternatives may also be combined: because the Covenant's

coverage of Purchased Copies is complete and unreserved, the Court may dismiss Paragraphs 137 to 144 as moot while entering the coextensive confirmation as to the remainder.

The Counterclaim itself pleads the premise of this alternative. It alleges that the declaration it seeks "turns on the same core conduct and operative facts underlying Mr. Gilbert's own claim," and that "[r]esolving it requires no separate proceeding—only that the Court consider the whole of the conduct Mr. Gilbert has put at issue." (Counterclaim ¶ 125.) The whole of the conduct Plaintiff has put at issue is the conduct the First Amended Complaint pleads; the confirmation would hold the Counterclaim to its own description.

To be clear, Plaintiff does not contest Anthropic's right to plead, take discovery on, and prove its affirmative defense of fair use to the claims pleaded in the First Amended Complaint, including the purpose and character of the accused copying. Any order granting this motion may say so. What no party is entitled to is a freestanding declaration on the fairness of Training Uses as such. Whatever weight Anthropic's purpose and use carry in its defense of the pleaded claims, they will receive in that defense; a separate judgment declaring them fair is relief no pleaded claim calls for.

## VI. <u>The remainder of the Counterclaim is not the subject of this motion.</u>

To the extent the Counterclaim seeks a declaration of non-infringement as to the acquisition, reproduction, and retention pleaded in the First Amended Complaint, it mirrors the Complaint, and Plaintiff does not move against it. Nor does he move against Paragraphs 145 to 147, which concern Anthropic's filtering guardrail: the guardrail's operation is not challenged (Answer ¶ 145), and the only dispute those paragraphs touch, the lawfulness of the LibGen-sourced reference copies the system runs on, is within the pleaded claims, which reach every unauthorized reproduction of the Work made from a pirate-sourced copy (FAC ¶¶ 61, 62,

74, 79), and will be resolved with them. Stated by paragraph: Paragraphs 137 to 144 fall entirely within this motion; Paragraphs 129 to 136 survive insofar as they support the retained mirror declaration, and fall within this motion only insofar as they seek a freestanding declaration on the fairness of Training Uses as such; and Paragraphs 126 to 128 and 148, which incorporate, frame, and pray the declaration, survive and fall to the same extent as the substance they carry. Prayer B is narrowed the same way: its ground that "any reproduction or use of the Work was fair use" survives as to the pleaded reproductions and falls within this motion as to the rest. What remains for adjudication is Anthropic's declaration that the acquisition, reproduction, and retention of pirate-sourced copies pleaded in the First Amended Complaint did not infringe, including because of fair use, resolved with the claims themselves. If Anthropic contends the Counterclaim is indivisible, Part III explains why indivisibility argues for more dismissal, not less. This motion asks only that the case remain the size it was filed at.

## CONCLUSION

The Court should dismiss the Counterclaim in part, without prejudice, as moot and for lack of an actual controversy, or under Rule 12(c), or, in the alternative, in the exercise of the Court's discretion under 28 U.S.C. § 2201(a). The dismissal would reach only the declaratory judgment sought, beyond the claims pleaded in the First Amended Complaint, concerning the fairness or lawfulness of the use of the Work in the training, development, improvement, testing, offering, or operation of Anthropic's large-language models, or concerning Anthropic's lawfully purchased copies of the Work. It would not extend to Paragraphs 145 to 147 of the Counterclaim, would not reach the fairness or lawfulness of any reproduction pleaded in the First Amended Complaint, and would not affect those claims, the defenses to them, or the Counterclaim's remainder. In the further alternative, the Court should confirm that the Counterclaim is

coextensive with the claims pleaded in Plaintiff's operative complaint and will be adjudicated on the same record, presenting no separate question concerning Training Uses or Purchased Copies, with the scope of discovery to be conformed to that confirmation at the Rule 16 conference or by later amendment of the scheduling order. Any order granting this motion may provide that Anthropic retains the right to plead, take discovery on, and prove its affirmative defense of fair use to the claims pleaded in the First Amended Complaint, including the purpose and character of the accused copying.

DATED: August 27, 2026

Respectfully submitted,

*/s/ Daniel B. Gilbert*

Daniel B. Gilbert
48 Parsons St Unit 6
Easthampton, MA 01027
(413) 265-1600
daniel.b.gilbert@gmail.com

*Plaintiff, Pro Se*

**CERTIFICATE OF SERVICE**

I certify that on August 27, 2026, I filed this document using the CM/ECF system, and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Daniel B. Gilbert*

Daniel B. Gilbert