**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DANIEL BENJAMIN GILBERT,**<br><br>Plaintiff,<br><br>v.<br><br>**ANTHROPIC PBC,**<br><br>Defendant. | Case No. 3:26-cv-30081-MGM |

**ANTHROPIC'S OPPOSITION TO PLAINTIFF'S**
**MOTION TO DISMISS AMENDED COUNTERCLAIM**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............ 1
II. BACKGROUND ............ 2
III. LEGAL STANDARD ............ 3
IV. ARGUMENT ............ 4
A. Mr. Gilbert did not covenant the claim he is suing on. ............ 5
B. Mr. Gilbert's claim presents a dispute over Anthropic's fair use training purpose. ............ 6
C. The questions presented are not severable. ............ 7
D. The requested declaration is not redundant or unnecessary ............ 10
V. CONCLUSION ............ 11

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Airframe Sys., Inc. v. Raytheon Co.*,
601 F.3d 9 (1st Cir. 2010)....................9

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013)....................4, 5

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023)....................9, 10

*Bartz v. Anthropic PBC*,
No. C 24-05417 WHA, 2025 WL 2308091 (N.D. Cal. Aug. 11, 2025)....................9

*Deckers Outdoor Corp. v. Primark U.S. Corp.*,
No. 23-cv-10233-ADB, 2023 WL 8477409 (D. Mass. Dec. 7, 2023)....................4, 10

*Esoterix Genetic Lab'ys LLC v. Qiagen Inc.*,
No. 14-cv-13228-ADB, 2016 WL 4555613 (D. Mass. Aug. 31, 2016)....................6, 7

*Leach v. Ross Heater & Mfg. Co.*,
104 F.2d 88 (2d Cir. 1939)....................10

*Littelfuse, Inc. v. Mersen USA Newburyport-MA, LLC*,
No. 1:17-cv-12375-IT, 2023 U.S. Dist. LEXIS 244509 (D. Mass. Apr. 18, 2023)....................7

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....................3

*Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC*,
No. 12-cv-188, 2012 WL 12863934 (W.D. Wash. July 25, 2012)....................4

*NextGen Builders LLC v. Platinum Builders Grp. LLC*,
No. 24-cv-202, 2024 WL 2977661 (D. Ariz. June 13, 2024)....................4

*Redmond v. Yachting Sols., LLC*,
No. 2:17-cv-292, 2018 WL 1075030 (D. Me. Feb. 27, 2018)....................10

*Sadowski v. FYI Networks, LLC*,
No. 9:23-cv-81267, 2024 U.S. Dist. LEXIS 189879 (S.D. Fla. Oct. 17, 2024)....................4

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
No. 16-cv-724, 2017 WL 11709196 (S.D.N.Y. May 16, 2017)....................4, 11

*U.S. Water Servs., Inc. v. ChemTreat, Inc.*,
794 F.3d 966 (8th Cir. 2015) .......... 7, 9

*Valentín v. Hosp. Bella Vista*,
254 F.3d 358 (1st Cir. 2001) .......... 4

*Verizon New Eng., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322*,
651 F.3d 176 (1st Cir. 2011) .......... 4

**FEDERAL STATUTES**

17 U.S.C. § 107 .......... 2

17 U.S.C. § 107(1) .......... 1, 3, 9

17 U.S.C. § 502 .......... 2

17 U.S.C. § 503 .......... 2

28 U.S.C. § 2201(a) .......... 3

## I. INTRODUCTION

Anthropic seeks a declaratory judgment that the copying Mr. Gilbert accuses was fair use because of the purpose it served. The fair use analysis focuses on the "purpose and character of the use." 17 U.S.C. § 107(1). Anthropic copied Mr. Gilbert's work for the purpose of training and developing large language models ("LLMs"). That use was fair because it transformed the work and had no adverse impact on any market for Mr. Gilbert's work.

Nevertheless, Mr. Gilbert sued Anthropic for copyright infringement. He also, however, claimed that the suit does not target Anthropic's use of the work for LLM training purposes. Mr. Gilbert maintains that the narrow pleading prevents Anthropic from proving the very fair use purpose that makes the accused download lawful. Anthropic therefore filed a declaratory counterclaim to ensure the full scope of Anthropic's use of the work is put at issue. Mr. Gilbert now moves to dismiss Anthropic's counterclaim to prevent Anthropic from introducing these fair use issues into the case.

His grounds for dismissal fail. Mr. Gilbert says his Covenant Not to Sue mooted whatever controversy there is. But a covenant moots a case only when the threat of suit was the controversy, and Anthropic's counterclaim does not rest on fear of a second lawsuit. It rests on Mr. Gilbert's pending claim and on his position that the Court cannot even consider Anthropic's purpose for making copies. Mr. Gilbert also says no controversy about training exists because his complaint does not accuse it. But declaratory relief does not confine a counterclaim to the theories a plaintiff elects to plead; it exists to resolve what a claim leaves open.

The Court should deny the motion and allow Anthropic's counterclaim to proceed.

## II. BACKGROUND

Anthropic was founded as a research company built on the principle that the most capable artificial intelligence systems should also be the safest. (ECF No. 36 ¶¶ 95–96.) Training AI tools based on LLMs requires trillions of words drawn from diverse texts. Books supply a useful share of that text though only a fraction of the total. (*Id.* ¶¶ 98–100.)

To meet that need, Anthropic downloaded book text from online databases—LibGen in 2021 and PiLiMi in 2022—for the sole purpose of conducting research on training and developing LLMs. The text was used to map statistical relationships between words so that the LLMs can generate original text in response to a user's prompt. (*Id.* ¶¶ 101–02.)

Mr. Gilbert asserts he is the author of *Hacking World of Warcraft* (the "Work"). His First Amended Complaint ("FAC" or "Complaint") alleges Anthropic downloaded, reproduced, stored, and retained an unauthorized copy of his Work as a "general-purpose resource" and expressly states that his claim does not target Anthropic's "model training" use of the Work. (ECF No. 23 ¶ 12) Mr. Gilbert also seeks an injunction (under 17 U.S.C. § 502) and impoundment and destruction remedies (under 17 U.S.C. § 503). *Id*.

Anthropic filed a counterclaim seeking a declaratory judgment of non-infringement. Anthropic downloaded, stored, or retained the Work for the purpose of training and developing LLMs, and this use was fair under 17 U.S.C. § 107. (ECF No. 28.) Anthropic's use was for a transformative purpose distinct from the Work's purpose. (*Id*. ¶¶ 129-148.) No output of the training or development process gives any user access to the Work, summarizes the Work, or provides a substitute for buying or reading it. And because no output stands in for the Work, Anthropic's use does not compete with the Work in the market where the Work is sold. (*Id.* ¶ 104.) Accordingly, Anthropic seeks a declaratory judgment that Anthropic does not infringe and has not

infringed any right in the Work held by Mr. Gilbert, and that Anthropic is not liable to Mr. Gilbert for damages, injunctive relief, impoundment, or any other remedy.

Mr. Gilbert answered Anthropic's Amended Counterclaim and moved to dismiss. Attached to the answer was a Covenant Not to Sue (the "Covenant"). (ECF No. 41-1.) He promised not to assert a copyright claim against Anthropic arising from "any Training Uses of the Work" or from "the acquisition, digitization, reproduction, retention, distribution, or use of any Purchased Copy." (*Id.* § 2.1.) The answer claims he "does not contest Anthropic's right to plead, take discovery on, and prove its affirmative defense of fair use to the claims pleaded in the [FAC], including the purpose and character of the accused copying." (ECF No. 41 ¶ 121.) Mr. Gilbert further asserts that the "pleaded case is narrow: where one book came from, whether it was kept, and whether keeping it was fair." (ECF No. 43 at 16.)

In short, while Mr. Gilbert says fair use is still a defense in this action, he means only a defense that mirrors the "narrow" accused conduct—"whether *keeping* [the Work] was fair" (*id.*)—and not what the Copyright Act's fair use inquiry considers: the "purpose and character of the *use*." 17 U.S.C. § 107(1) (emphasis added).

## III. LEGAL STANDARD

The Declaratory Judgment Act permits a declaration "[i]n a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201(a). The question is whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Courts also ask whether "granting relief would serve a useful purpose" or "would be of practical assistance in

setting the underlying controversy to rest." *Verizon New Eng., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322*, 651 F.3d 176, 188 (1st Cir. 2011) (citation omitted).

Mr. Gilbert moves under Rule 12(b)(1) or Rule 12(c). (ECF No. 43 at 4.) Both require the Court to "credit" the non-movant's allegations and "draw all reasonable inferences" in its favor. *See Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). For mootness, the party asserting its own voluntary act eliminated a controversy must meet the "formidable burden" to show the dispute is "no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted).

## IV. ARGUMENT

Mr. Gilbert accuses Anthropic of infringement for unauthorized downloading of his Work. Anthropic answers that the download served a fair use and that the download cannot be assessed devoid of its use. Mr. Gilbert's response is to insist that the use of his Work is not at issue in the case—only the download. But that is false, and his response created the need for declaratory relief. A defendant accused of infringement may seek a judgment affirmatively establishing that it did not infringe. *See*, *e.g.*, *Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC*, No. 12-cv-188, 2012 WL 12863934, at *6 (W.D. Wash. July 25, 2012) (an accused infringer is interested "not only in avoiding liability, but also in affirmatively establishing" that it did not infringe).[1]

Mr. Gilbert's motion confirms Anthropic's need for a declaration. The motion makes five arguments: (a) the Covenant moots the declaration as to training uses and purchased works (ECF

[1] *See also Deckers Outdoor Corp. v. Primark U.S. Corp.*, No. 23-cv-10233-ADB, 2023 WL 8477409, at *4 (D. Mass. Dec. 7, 2023); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16-cv-724, 2017 WL 11709196, at *2 (S.D.N.Y. May 16, 2017); *Sadowski v. FYI Networks, LLC*, No. 9:23-cv-81267, 2024 U.S. Dist. LEXIS 189879, at *10–13 (S.D. Fla. Oct. 17, 2024); *NextGen Builders LLC v. Platinum Builders Grp. LLC*, No. 24-cv-202, 2024 WL 2977661, at *2–3 (D. Ariz. June 13, 2024).

No. 43 at 6–9); (b) no actual controversy exists concerning training uses or purchased copies (*id.* at 9–13); (c) the declaration challenges severable questions (*id*. at 13–15); (d) the declaration would serve no useful purpose (*id*. at 15–17); and (e) any declaration should be coextensive with the Complaint (*id*. at 17–19). None has merit. Each is addressed in turn below.

**A. Mr. Gilbert did not covenant the claim he is suing on.**

Mr. Gilbert argues that the Covenant moots the Counterclaim under *Already, LLC v. Nike, Inc*., 568 U.S. 85 (2013). (ECF No. 43 at 6–9.) It does not, for a simple reason: Mr. Gilbert did not covenant the claim he is suing on.

The Covenant releases training and development activities in the abstract while reserving claims based on downloads and copies made for the purpose of training. Section 1.5 reserves "all claims arising from the acquisition, downloading, reproduction, storage, or retention of any Pirate-Sourced Copy," and Section 3.1 confirms his reservation reaches "*whatever the purpose* for which it was made or the use to which it was later put." (ECF No. 41-1 § 3.1 (emphasis added).) Anthropic used such text in LLM training research from 2021 through late 2022 and uses it today in the reference dataset on which the CCS filter, designed to prevent model outputs containing snippets of copyrighted text, runs. (ECF No. 36 ¶¶ 101–02, 107–09, 129–30, 145–47.)

*Already* does not help Mr. Gilbert. In *Already*, Nike sued Already for trademark infringement, Already counterclaimed for a declaration of invalidity, and Nike then covenanted never to sue Already over the accused shoes—the very conduct its own complaint had challenged. The Court held the declaratory judgment claim was moot because the covenant eliminated the only thing that made it a justiciable controversy: "Already's only legally cognizable injury—the fact that Nike took steps to enforce its trademark—is now gone and, given the breadth of the covenant, cannot reasonably be expected to recur." 568 U.S. at 100. Mr. Gilbert's Covenant does the opposite. It releases claims over training, which he never asserted, and expressly reserves the claim

he did assert: infringement by downloading and retaining the Work. And Anthropic's defense to that claim—that the download was fair use because it was made in order to train and develop LLMs—is the controversy the Counterclaim asks the Court to decide. A covenant moots a declaratory claim only when it removes the dispute; this one does no such thing.

Instead, *Esoterix Genetic Lab'ys LLC v. Qiagen Inc.*, No. 14-cv-13228-ADB, 2016 WL 4555613, at *4 (D. Mass. Aug. 31, 2016), is on point. In *Esoterix*, the plaintiff sued its licensee for breach of a patent license, the licensee counterclaimed that the patents were invalid, and the plaintiff then delivered a covenant not to sue for infringement and moved to dismiss, arguing that the covenant "eliminates any case or controversy." *Id.* The Court denied the motion because, like Mr. Gilbert, the plaintiff focused on mooting the wrong controversy. Qiagen did not counterclaim out of fear of an infringement suit; it counterclaimed because patent invalidity would resolve the underlying license dispute, which the covenant "did not eliminate." *Id.* at *5. So too here. Mr. Gilbert sues for Anthropic's acquisition and retention while disclaiming the training and development uses that would establish the transformative purpose perfecting Anthropic's fair use defense. Only a judgment or stipulation on that purpose resolves the controversy. The Covenant offers neither.

### B. Mr. Gilbert's claim presents a dispute over Anthropic's fair use training purpose.

Mr. Gilbert suggests declaratory relief is available only where (1) a suit has been threatened on the precise legal theory at issue or (2) for a counterclaim, the complaint itself pleads that theory. *See* ECF No. 43 at 1 (the FAC "does not ask this Court to decide whether the use Anthropic calls training is fair"), 2 ("the Complaint does not present . . . fairness of training"), 7 ("no existing claim is being held back for a later suit"). Both positions are wrong.

*MedImmune* held that exposure to liability on the precise legal theory there—threat of a patent infringement suit while royalties were paid—is not a prerequisite to declaratory relief. *See Littelfuse, Inc. v. Mersen USA Newburyport-MA, LLC*, No. 1:17-cv-12375-IT, 2023 U.S. Dist. LEXIS 244509, at *8 (D. Mass. Apr. 18, 2023). Nor is declaratory relief limited to issues expressly asserted in the plaintiff's complaint. Counterclaim declaratory relief is proper for a dispute implicated by the plaintiff's complaint, even one not expressly threatened or accused. *See Esoterix*, 2016 WL 4555613, at *5; *U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 975–76 (8th Cir. 2015) (declaratory jurisdiction over patent counterclaim where the complaint pleaded a trade secret claim implicating patented technology).

*Esoterix* is again instructive. The plaintiff did not allege patent infringement and did not threaten to bring an infringement claim as to the four patents at issue in the counterclaim. But because the patent license dispute it did plead turned on the patents' validity, a declaratory counterclaim for invalidity was proper: the license dispute "depends on whether the underlying patents are valid or invalid." *Esoterix*, 2016 WL 4555613, at *5. The same is true here. The FAC does not accuse Anthropic's use of the Work to train and develop LLMs—except to support a basis for personal jurisdiction (ECF No. 23 ¶ 8)—but the claim Mr. Gilbert does press is resolved by a fair use analysis that accounts for Anthropic's purpose and use of the Work. Mr. Gilbert's acquisition claim, like the license claim in *Esoterix*, necessarily implicates a disputed issue—here, fair use—that may dispose of the entire controversy between the parties. Declaratory relief is proper in these circumstances.

### C. The questions presented are not severable.

Gilbert's motion asks the Court to hold that the fairness of training is outside this case, that Anthropic's counterclaim may not introduce it, and that discovery be conformed to that holding.

(ECF No. 43 at 16, 17 (arguing Anthropic's counterclaim would "put the workings of Anthropic's model training at issue").) Mr. Gilbert says he "does not contest Anthropic's right to plead, take discovery on, and prove its affirmative defense of fair use *to the claims pleaded* in the First Amended Complaint, including the purpose and character of the accused *copying*." (ECF No. 41 ¶ 121 (emphases added).) Read closely, however, even that sentence permits a defense limited only to "whether *keeping* [the Work] was fair" (ECF No. 43 at 16 (emphasis added)) and excludes the training purpose the copying served.

The severance theory depends on a distinction Mr. Gilbert cannot maintain. He tells the Court that reproductions "made from pirate-sourced copies in the course of training are within the claims pleaded," and offers that construction as binding. (ECF No. 43 at 7.) He adds that such claims are "reserved and . . . within the claims pleaded and litigated here." (*Id.* at 8.) His Covenant says the same: no new reproduction from a pirate-sourced copy is released "whatever its purpose," and no download of such a copy is a Training Use "whatever the purpose for which it was made or the use to which it was later put." (ECF No. 41-1 § 3.1.) So according to the Covenant, training-related reproductions are in the case and accused, but the fairness of that training purpose is not.

Further, the purchased copy is part of the same course of conduct and interrelated with the accused copies that Mr. Gilbert references throughout this litigation. When Anthropic removed "pirate-sourced copies" of books from its training corpus, it decided to develop an alternate source of book text. So it bought and scanned physical books, including the Work, to train the models it released. (ECF No. 36 ¶¶ 103–06, 137.) The purchased copy is how Anthropic's models are trained today—the same training Mr. Gilbert invokes to establish personal jurisdiction in this District (ECF No. 23 ¶¶ 8, 10), accuses as post-May 26, 2023 infringement to stave off a statute-of-limitations defense (*id.* ¶ 62), and targets for destruction as an infringement remedy (*id.* Prayer D).

Mr. Gilbert cannot rely on Anthropic's training and commercialization to bring Anthropic into this forum, side-step statute-of-limitation challenges, and seek extraordinary injunctive remedies, and then place that same conduct beyond adjudication. *See ChemTreat*, 794 F.3d at 975 (rejecting plaintiff's contention that its complaint was "carefully drafted" to separate its trade secret claim from its patent rights and declining to let it "distance itself from the connections it pointedly made in its complaint").

Critically, fair use law does not permit the separation between acquisition and use urged by Mr. Gilbert. The first factor asks about "the purpose and character of the use," 17 U.S.C. § 107(1), and the purpose of the accused downloads, as pleaded, was training and developing LLMs. (ECF No. 36 ¶¶ 101, 129–30.) The court in *Kadrey v. Meta Platforms, Inc.*, for example, rejected the same argument Mr. Gilbert pleads. 788 F. Supp. 3d 1026, 1047–48 (N.D. Cal. 2025) (Meta's downloading "must still be considered in light of its ultimate, highly transformative purpose: training [Meta's LLM]"). Even *Bartz v. Anthropic*, which embraced the separation *Kadrey* rejected, reserved for trial whether Anthropic's purpose was LLM development or a general-purpose library. 787 F. Supp. 3d 1007, 1034 (N.D. Cal. 2025); *Bartz v. Anthropic PBC,* No. C 24-05417 WHA, 2025 WL 2308091, at *3 (N.D. Cal. Aug. 11, 2025). Indeed, the First Circuit views "possession" and "use" of a copyrighted work as "so closely related" that they are treated as one copyright claim for purposes of "claim-splitting" and *res judicata*. *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14–16 (1st Cir. 2010).

*Warhol* does not help Mr. Gilbert either; it is a case about identifying purpose and use, not severing them. He invokes the statement that "[t]he same copying may be fair when used for one purpose but not another," *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,* 598 U.S. 508, 533 (2023), but reads it as license to adjudicate copying apart from the ends it served. *Warhol*

says the opposite: the same copying is fair or unfair depending on the ultimate purpose, so the purpose must be identified and assessed, not excised and ignored. The first factor is "an objective inquiry into what use was made, *i.e.*, what the user does with the original work," *id.* at 545, and the Court did not ask whether making the Prince silkscreen was fair as a discrete act—it asked what purpose the challenged licensing served, adding that "[h]ad AWF's use been solely for teaching purposes, that clearly would affect the analysis," *id.* at 534 n.10. So too here. Anthropic pleads it acquired the text solely to train and develop LLMs; Mr. Gilbert alleges Anthropic wanted a general-purpose library. *Warhol* thus directs the Court to answer that question, not disregard it.

### D. The requested declaration is not redundant or unnecessary.

Separate from challenging Anthropic's declaratory counterclaim for introducing issues he attempts to disclaim, Mr. Gilbert argues Anthropic's declaratory counterclaim is redundant—a "mirror non-infringement" claim. ECF No. 43 at 14. But whether a declaratory counterclaim is redundant is "very difficult to determine . . . prior to trial," and the "safer course . . . is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1406 (3d ed. 2020); *see Leach v. Ross Heater & Mfg. Co.*, 104 F.2d 88, 91–92 (2d Cir. 1939) (error to strike a declaratory counterclaim "at so early a stage" even if trial might render it unnecessary). Accordingly, courts decline to strike a declaratory counterclaim where it is "premature, at this early stage of the litigation, to conclude that resolving plaintiff's claims will necessarily resolve the issues outlined in Defendant's claim for declaratory judgment." *Redmond v. Yachting Sols., LLC*, No. 2:17-cv-292, 2018 WL 1075030, at *3 (D. Me. Feb. 27, 2018); *see also Deckers*, 2023 WL 8477409, at *4 (declining to strike non-infringement counterclaims because defendant may be found not liable on other affirmative defenses without

reaching the questions the counterclaims raised); *Solid Oak Sketches*, 2017 WL 11709196, at *2 (same for fair use counterclaim).

Whether the declaration requested by Anthropic will prove necessary cannot be answered now. Anthropic could prevail here on a ground other than fair use. For example, a dismissal for failure to join a necessary and indispensable party (Third Defense) would decide nothing about the counterclaim. Two other parties have interests in the Work, and neither has been joined or has relinquished anything. Wiley, the registered claimant, legal owner, and publisher of the Work, declined to say whether it would pursue a claim and declined to authorize Mr. Gilbert's suit. ECF No. 23 ¶ 22 & Ex. A. Whitehead, the co-author, allegedly signed a declaration of non-objection and a covenant not to sue that transfers nothing and preserves his economic interest in this litigation. ECF Nos. 23–10, 23–11. Whether those circumstances require joinder is a question for another day. The point here is narrower: that uncertainty counsels against dismissal.

**A declaration that is coextensive with the complaint would include Anthropic's fair use purpose.**

Mr. Gilbert's fallback request—that any declaration be coextensive with the Complaint—fails for the same reasons. As shown above, his own Covenant and Complaint place training and the purchased copy in this case. A declaration coextensive with that controversy necessarily reaches Anthropic's purpose. And to the extent the declaration overlaps the claim he pleads, overlap counsels deferral, not dismissal.

## V. CONCLUSION

Mr. Gilbert accused Anthropic of infringement, invoked Anthropic's use of the Work to train and develop its models, but now takes the position that Anthropic's purpose, which determines (in part) the lawfulness of the accused copying, is outside this case. That position created a live controversy over Anthropic's fair use. It existed when Anthropic filed its

Counterclaim, and neither the Covenant nor this motion has eliminated it. For the foregoing reasons, Anthropic respectfully requests that the Court deny Mr. Gilbert's motion.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Yar R. Chaikovsky*
Lauren Papenhausen (BBO# 655527)
**WHITE & CASE LLP**
75 State St.
Boston, MA 02109-1814
Telephone: (617) 979-9300
Facsimile: (617) 979-9301
lauren.papenhausen@whitecase.com

Yar R. Chaikovsky (*pro hac vice*)
Andy LeGolvan (*pro hac vice*)
Amir Jabbari (*pro hac vice*)
**WHITE & CASE LLP**
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
yar.chaikovsky@whitecase.com
andy.legolvan@whitecase.com
amir.jabbari@whitecase.com

*Attorneys for Defendant Anthropic PBC*

**CERTIFICATE OF SERVICE**

I, Lauren Papenhausen, hereby certify that on September 10, 2026, I caused a true and accurate copy of the foregoing to be served on counsel and parties of record by CM/ECF.

*/s/ Yar R. Chaikovsky*
Yar R. Chaikovsky